**Catharine TAYLOR, Plaintiff-Appellant,**

v.

**Richard S. SCHWEIKER, Secretary of Health and Human Services, Defendant-Appellee.**

**No. 82–3051.**

United States Court of Appeals, Seventh Circuit.

Submitted May 30, 1984.[*]

Decided July 20, 1984.

Floyd A. Ramsier, Fort Wayne, Ind., Sanford Meizlish, Barkan & Neff Co., Columbus, Ohio, for plaintiff-appellant.

James W. Miles, Dept. of Health and Human Services, Chicago, Ill., R. Lawrence

---

[*] After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." *See* Rule 34(a), Fed.R.App.P.; Circuit Rule 14(f). No such statement having been filed, the appeal has been submitted on the briefs and record.

Steele, Jr., U.S. Atty., Hammond, Ind., for defendant-appellee.

Before PELL, COFFEY and FLAUM, Circuit Judges.

FLAUM, Circuit Judge.

This is an appeal from a district court judgment affirming a decision by the Secretary that claimant Catharine Taylor did not qualify for Social Security disability insurance benefits. For the reasons discussed below, we reverse and remand the case to the Social Security Administration.

The claimant is a former elementary school teacher who taught fifth and sixth grades from 1937 through 1942 and second grade from 1957 through 1974. In March 1976, she applied for Social Security disability benefits and her claim was allowed. It was determined, however, that her disability ceased in August 1977; that determination was not challenged and may not be challenged here. *Califano v. Sanders*, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). In May 1981, when the claimant was 61 years old, she again filed for disability benefits.

The application was denied both initially and on reconsideration. In December 1981, a *de novo* hearing was conducted by an Administrative Law Judge (ALJ); the claimant was represented by an attorney and testified on her own behalf. The ALJ determined that she was not disabled for purposes of the statute, and that decision became the final decision of the Secretary when it was adopted by the Appeals Council in March 1982. The claimant initiated review in federal court, and the district court granted summary judgment in favor of the Secretary. On appeal, the claimant argues that the decision of the ALJ was not supported by substantial evidence in the record and that the ALJ did not consider the credibility of her claims of inability to work.

I.

The claimant alleged that she was unable to work because of nervousness and emotional problems, high blood pressure, and the after-effects of several surgical procedures. The ALJ found that she suffered from mild degenerative arthritis and mild depression. He further found that these impairments were not severe and, consequently, that the claimant was not disabled for purposes of the Social Security Act.[1]

The question before us is whether the record as a whole contains substantial evidence to support the Secretary's findings. *Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir.1982); 42 U.S.C. § 405(g). Substantial evidence is that which "a reasonable mind might accept as adequate to support [the] conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). If the record contains such support, we must affirm, 42 U.S.C. § 405(g), unless there has been an error of law, *Schmoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir.1980).

The record in this case consists of the claimant's testimony and a number of medical and psychiatric reports. At the hearing, the claimant testified that she is nervous and sometimes has trouble with her memory. She testified that she no longer goes out or attends church because to do so causes emotional problems and stress. Also, after she had a hysterectomy in 1971 she no longer could "keep up with the pace." She stated that she couldn't stand to be around the children and her co-workers and that she would cry or become extremely angry almost every day during her

---

1. Social Security regulations prescribe a sequential inquiry to be followed in determining whether a claimant is disabled. The following steps are addressed in order. (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe?" (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claim- ant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer, at any point other than step 3, stops inquiry and leads to a determination that the claimant is not disabled. 20 C.F.R. § 404.1520 (1983).

last two years of teaching. During that time, she stayed in bed from Friday evening until Monday morning every week. At present, she stays at home where she prepares the meals, does most of the laundry, and does a good deal of the housecleaning. She reported having surgery for torn cartilage on her left knee and said that she continues to experience pain and stiffness in both knees. She estimated that she could probably walk about three blocks and stand in one place for about two minutes. She also reported symptoms of swelling and pain in her hands which she believes are caused by arthritis. These problems cause difficulty in lifting and carrying objects. Other operations have included the hysterectomy, a procedure for hemorrhoids, and bladder surgery. She said that the stitches from several of these operations occasionally bother her and would prevent her from lifting more than a few books at one time. She also reported possible irregular heartbeats, causing shortness of breath and a little dizziness. She further testified that to be with people bothers her a great deal and that she is not able to do tedious tasks; in response to a question she said that she would not be able to tolerate grading papers. She said her condition has not appreciably changed since 1977.

Also before the ALJ were medical reports from seven doctors, three psychiatrists, and one psychologist. The medical reports, taken as a whole, confirm her reported operations and indicate arthritis in her left knee, a slightly enlarged heart, some irregular heartbeats, and possible heart disease and hypertension. As of August 1981, the medication taken for the hypertension was controlling it only poorly.

Four psychiatric and psychological reports outline the claimant's emotional problems. In April 1976, a psychiatrist, Dr. Fiacable, found possible evidence of mild depressive symptoms with a "probably associated anxiety under pressure." He doubted that she had the ability to return to a competitive setting and to cope with day-to-day routine. In May 1976, a psychologist diagnosed the claimant as "normal with considerable emotional overlay," and indicated that she "could not or should not" go back to her teaching situation. In August 1977, a psychiatrist, Dr. Musselman, did not make a specific diagnosis but included the following statement: "She is capable of doing all her own housework and thus in the opinion of this examiner, I would not consider her totally disabled on the basis of her psychological problems." In June 1981, an internist, Dr. Bartel, conducted what appears to have been a neuropsychiatric evaluation. He diagnosed her condition as depressive neurosis-reactive and indicated that she might respond to psychotherapy and medication. He felt that she could relate to other people in work or personal situations, but he also stated that at that time she could concentrate only on simple tasks and that her ability to withstand the stresses of day-to-day work activity was only fair. He did not specifically address her ability to handle the stresses of teaching.

The ALJ concluded that the claimant's emotional problem, which he termed mild depression, was not a severe impairment. He based this conclusion on Dr. Bartel's report, Dr. Musselman's comment that a specific diagnosis was not warranted, and the claimant's testimony that she could take care of her personal needs and housework. In affirming the ALJ's decision, the district court stated that there was no indication that the ALJ had ignored the psychiatric reports or overlooked any of her infirmities or their effects.

## II.

■ We find it necessary to remand this case because we are unable to conclude that the critical finding of the ALJ is based on substantial evidence. The critical finding was that the claimant's emotional problem is not a severe impairment. A severe impairment is, for purposes of the statute, one which significantly limits an individual's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a) (1983). The Secretary's regulations pro-

vide examples of basic work activities including use of judgment; responding appropriately to supervision, co-workers and usual work situations; and dealing with changes in a routine work setting. 20 C.F.R. § 404.1521(b)(4), (5) & (6) (1983).

■ Looking only at the claimant's emotional limitation and the evidence in the record regarding it, we do not agree that a reasonable mind, viewing the record as a whole, would find adequate support for the conclusion that her depression does not significantly limit her ability to perform basic work-related functions. Although her intellectual ability and reality orientation appear to be unaffected, the psychologist's 1976 report stated that she could not or should not go back to teaching, and Dr. Fiacable's 1977 report stated that she could not cope with the day-to-day routine in a competitive work setting. Although Dr. Musselman did not consider her to be totally disabled because she could do her own housework, this finding fails to address the effect her depression would have on her ability to perform a job. The later report by Dr. Bartel stated that she can concentrate only on simple tasks and has only a fair ability to withstand the stress of work. Since the claimant is by all accounts a fairly intelligent woman who did withstand the day-to-day stresses of elementary school teaching for many years, the only reasonable conclusion is that her current depression has "significantly" limited her work-related abilities. This conclusion is supported by portions of her testimony, not recited by the ALJ, in which she indicates that she has an extremely low energy level and falls apart under stress or when she has to deal with a number of people.

The claimant's limitations may or may not be totally disabling, but we believe that the evidence in the record warrants further inquiry. The "severity" requirement is only an initial step in the entire process of making a disability determination.[2] If the record supports a finding that her impairment is "severe," the next steps would be for the ALJ to determine if the impairment meets or exceeds the regulatory description of certain disabling conditions and, if not, whether the impairment prevents her returning to her former work and also prevents her from performing other work available within the economy. (See Footnote 1). These inquiries are appropriate and warranted in this case.

### III.

■ Our disagreement with the conclusions of the ALJ may well have resulted from what we perceive as his errors in dealing with the material contained in the record. This court recently emphasized that the decisions in disability cases must be based upon a fair and impartial presentation of all the medical evidence that is credible, supported by clinical findings, and relevant to the question at hand. *Garfield v. Schweiker*, 732 F.2d 605, 610 (7th Cir. 1984). In this case, the ALJ failed to mention two relevant reports and portions of Dr. Musselman's and Dr. Bartel's reports, and he gives no reason for this omission. "[A]n ALJ must weigh all the evidence and may not ignore evidence that suggests an opposite conclusion." *Whitney v. Schweiker*, 695 F.2d at 788. In addition, the ALJ in this case did not refer to the portion of claimant's testimony describing significant problems in functioning while, at the same time, he relied on her more positive statements to support his finding. It is possible that he found her more negative state-

2. The "severity" regulation was originally promulgated in 1978 and was intended to clarify terms contained in the 1968 regulations: "slight neurosis, slight impairment of sight or hearing or other slight abnormality or combination of slight abnormalities." 43 Fed.Reg. 55358. Inclusion of this step in the sequential analysis was designed to improve program efficiency by "limiting the number of cases in which it would be necessary to follow the vocational evaluation sequence." 45 Fed.Reg. 55574. This second step of the sequential analysis, therefore, is essentially an initial screening device which eliminates the need for further consideration only when the limitations alleged and supported by the record can be viewed as slight or, in the words of the regulation, if they do not "significantly limit [the claimant's] physical or mental abilities to do basic work activities." 20 C.F.R. § 404.1521(a) (1983).

ments less credible; if the fact-finder determines that evidence is not credible he may properly give it little or no weight. However, it is essential for meaningful appellate review for the ALJ to articulate reasons for accepting or rejecting particular sources of evidence. *Zblewski v. Schweiker*, 732 F.2d 75, 79 (7th Cir.1984). "A minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." *Id.* In the instant case such articulation was needed, and it was absent in the evaluation of both the medical evidence and the claimant's testimony.

The judgment of the district court is reversed with instructions to remand the case to the Social Security Administration for further proceedings consistent with this opinion.

REVERSED AND REMANDED.