John M. ZALEWSKI,
Plaintiff-Appellant,

v.

Margaret HECKLER, Secretary of the Department of Health and Human Services, Defendant-Appellee.

No. 84–1447.

United States Court of Appeals,
Seventh Circuit.

Argued Jan. 9, 1985.

Decided April 23, 1985.

James B. Connell, Crooks, Low & Connell, S.C., Wausau, Wis., for plaintiff-appellant.

Linda E. Tucker, Asst. Reg. Atty., Dept. of Health & Human Services, Chicago, Ill., for defendant-appellee.

Before BAUER, COFFEY, and FLAUM, Circuit Judges.

FLAUM, Circuit Judge.

The plaintiff John M. Zalewski brought this action in the district court following an administrative law judge's denial of his application for disability benefits and supplemental security income under the Social Security Act. The district court affirmed the denial. On appeal, we affirm the decision of the district court for the reasons set forth below.

## I.

Since his birth in September 1945, John M. Zalewski has suffered from various physical and mental problems. Zalewski contracted polio before reaching the age of two and was subsequently forced to undergo fifteen operations on his legs and to use braces and crutches for thirteen years. Shortly after graduating from high school, Zalewski was indicted in the shooting death of a seventy-eight year old man, but found not guilty by reason of insanity. Following his acquittal in 1966, Zalewski was committed to Central State Hospital in Waupun, Wisconsin. Upon his discharge in 1973, the doctors diagnosed Zalewski as having a passive-aggressive personality and Klinefelter's Syndrome.[1] Zalewski has been convicted of issuing worthless checks and theft since his release.

In May 1978, the Social Security Administration terminated child's disability benefits which Zalewski had been receiving since 1975 after finding that he had become engaged in substantial gainful activity. From 1978 to 1980, Zalewski held several jobs, but none of these lasted for more than three or four months because his employer would always find him physically unable to handle the work. These jobs included working as an inspector, a maintenance worker, a common laborer, and a truck driver for a cement contractor. In September 1979, Zalewski applied for disability benefits, supplemental security in-

---

1. Klinefelter's Syndrome is "a condition characterized by the presence of small testes, with fibrosis and hyalinization of seminiferous tubules, impairment of function and clumping of Leydig cells, and by increase in urinary gonadotropins." *Dorland's Illustrated Medical Dictionary* 1522 (25th ed. 1974). The syndrome is associated with an abnormality of the sex chromosomes. *Id.*

come, and child's insurance benefits, but the Social Security Administration denied his request.

On November 6, 1980, Zalewski again applied for disability benefits, supplemental security income, and child's insurance benefits pursuant to sections 202, 223, and 1602 of the Social Security Act by claiming that he was experiencing disabling back and leg problems. 42 U.S.C. §§ 402(d), 423, 1381a (1982). The Social Security Administration denied this application both initially and upon Zalewski's request for reconsideration. Although Zalewski requested a hearing on the denials, he failed to appear at the scheduled hearing, and the administrative law judge ("ALJ") dismissed his case. Upon Zalewski's request for a review, the Appeals Council of the Social Security Administration vacated the dismissal on February 9, 1982, and remanded Zalewski's case to an ALJ.

On September 21, 1982, Zalewski appeared and testified at a hearing held in Wausau, Wisconsin to determine if he was entitled to disability benefits. On January 31, 1983, the ALJ issued a decision denying Zalewski's application for disability benefits on the ground that the medical and other evidence submitted relating to his physical impairments and psychiatric or nonexertional limitations revealed that Zalewski retained the residual functional capacity for sedentary work.[2] Zalewski's request for review of the ALJ's decision was denied by the Appeals Council on May 26, 1983, and the ALJ's decision thus became the final decision of the Secretary of the Department of Health and Human Services ("Secretary"). Zalewski sought judicial review in federal district court, and the district court affirmed the Secretary's decision in an opinion on February 16, 1984. The district court concluded that substantial evidence supported the ALJ's conclusion that Zalewski was not disabled. On appeal, Zalewski contends that substantial evidence does not support the ALJ's determination that Zalewski was not disabled and that the ALJ did not make proper credibility findings as required by this circuit in *Zblewski v. Schweiker*, 732 F.2d 75 (7th Cir.1984).

## II.

The Social Security Act provides that the Secretary must make findings of fact and decisions as to the rights of an individual applying for disability insurance benefits. 42 U.S.C. § 405(b)(1) (1982). In cases where the Secretary has rendered a decision that is unfavorable in whole or in part to the individual, the Act requires the Secretary to include in the decision a statement of the case, in understandable language, discussing the evidence and stating the Secretary's determination and the reasons for the decision. *Id.* After a final decision by the Secretary, the individual is allowed to seek review in a civil action brought in federal district court. 42 U.S.C. § 405(g) (1982). In reviewing the decision, the district court must consider the Secretary's factual findings as conclusive if supported by "substantial evidence," *id.*, which the Supreme Court has defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)); *International Union of Operating Engineers v. NLRB*, 755 F.2d 78, 81 (7th Cir.1985). An appellate court also must affirm the Secre-

---

**2.** This determination by the ALJ was reached on the fifth step of the regulatory test for disability. Social Security regulations prescribe a sequential inquiry to be followed in determining whether a claimant is disabled. The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops inquiry and leads to a determination that the claimant is not disabled. 20 C.F.R. § 404.1520 (1984).

tary's decision as long as the findings are supported by substantial evidence and the Secretary has applied the correct legal standards. *Halvorsen v. Heckler,* 743 F.2d 1221, 1225 (7th Cir.1984).

The issue before this court is whether there is substantial evidence in the record to support the Secretary's conclusion that because Zalewski retains the residual functional capacity for sedentary work, he is not disabled. In deciding a disability case, the ALJ's determination must be based upon a fair and impartial presentation of all of the medical evidence that is credible, supported by clinical findings, and relevant to the particular issue. *Taylor v. Schweiker,* 739 F.2d 1240, 1243 (7th Cir.1984). The Social Security Act defines the term "disability" as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." [3] 42 U.S.C. § 423(d)(1)(A) (1982). Furthermore, the Act states that an individual shall be considered disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." 42 U.S.C. § 423(d)(2)(A) (1982). The regulations accompanying the Social Security Act define "sedentary work" as work which "involves lifting no more than ten pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools." 20 C.F.R. § 404.1567(a) (1984). The definition also provides that although a sedentary job is defined as one involving sitting, a certain amount of walking and standing may also be required occasionally. *Id.*

In the present case, the medical evidence concerning Zalewski's physical impairments supports the Secretary's decision that Zalewski can perform sedentary work. For example, after Zalewski sustained hairline fractures when a motorcycle fell on his left foot, he was examined on October 12, 1979, by Dr. Stoddard, an orthopedic surgeon referred by the Department of Health and Human Services. He reported that Zalewski had complained of an aching back since he had discarded his left-leg brace and shoe elevator many years earlier. Dr. Stoddard noted that upon physical examination, Zalewski was able to engage in a full range of motion without any pain of the cervical spine and was able to raise his legs at a ninety-degree angle while sitting and an eighty-five degree angle while lying. Dr. Stoddard concluded that Zalewski would be unable to squat or lift heavy objects as a result of his leg deformities and consequent decreased strength.

Another disability evaluation was conducted by Dr. Newton, a neurological specialist, on December 12, 1980. Dr. Newton examined Zalewski's lumbar spine and found it "unremarkable." The doctor noted that Zalewski could bend forward and touch the floor as well as raise his legs at a ninety-degree angle. Dr. Newton also noted that Zalewski's upper extremity motor, reflex, and sensory examination was normal. He concluded that Zalewski's leg and foot problems would prevent him from performing any job that required him to be standing, walking, or doing repeated bending, stooping, and lifting. Based on Dr. Newton's findings, a medical consultant, Dr. Nilsson, concluded that Zalewski's residual functional capacity would permit him to perform sedentary work since he would be able to lift up to ten pounds, occasionally lift or carry small objects, and sit six of eight hours per eight-hour workday with occasional standing and walking.

**3.** "Physical or mental impairment" is defined as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3) (1982).

In his own testimony before the ALJ, Zalewski stated that he had walked with a limp since being afflicted with polio and had experienced intermittent pain in the left ankle when required to stand on it for long periods of time. Zalewski also testified that he had to change positions frequently when he sat to avoid back pain, that he could only stand for approximately ten minutes before his back felt like it would give out, and that he could only walk a block without stopping to rest. He concluded that he did not think that he would be able to handle a job that required any standing or walking because of his left leg and back.

In addition to determining that Zalewski's physical impairments did not prevent him from performing sedentary work, the ALJ found that Zalewski's mental impairments, nonexertional limitations, would not significantly affect his residual functional capacity for sedentary work. In a psychiatric examination on December 12, 1980, for the Department of Health and Human Services, Dr. Bramhall, a psychiatrist, found that Zalewski seemed to be a pleasant, cooperative man with no unusual thought content or mood disorder. Dr. Bramhall noted, however, that Zalewski suffers from adult minimal brain dysfunction as revealed by his "impulsivity, low frustration tolerance, uncontrollable rages, and high internal anger and anxiety." The doctor also found that Zalewski suffers from a psychogenic pain disorder involving exaggerated complaints of back pain and other vague neurological symptoms. Dr. Bramhall concluded that Zalewski's prognosis with stimulant medication would be fair, but that his psychiatric difficulties would moderately restrict his occupational and social activities, his range of interests, and his ability to relate to others.

Other evidence relating to mental impairment consisted of reports made at the time of his trial and commitment from 1966 to 1973 and of a report prepared by a vocational counselor on September 29, 1982. The reports made by the doctors at Central State Hospital, where Zalewski was a patient, revealed that he had a passive-aggressive personality, but that he was making much progress in socializing and becoming a responsible member of the hospital community. After being released on parole in May 1970, Zalewski was readmitted to the hospital due to his unauthorized absence from parole. Zalewski proceeded to make a satisfactory adjustment to the hospital while he was working as a patient-barber and was again released in June 1972.

The final piece of evidence submitted by Zalewski to the ALJ was a letter by a vocational counselor, Robert Foster, for the California Department of Rehabilitation. In response to questions posed by Zalewski's attorney as to his client's ability to engage in sedentary job activities, Foster replied that Zalewski's antisocial personality would probably preclude him from activities involving a high degree of contact with the public. Foster noted that because most sedentary jobs would require Zalewski to interact with other individuals, he doubted Zalewski's ability to engage in any gainful competitive employment. Foster concluded by recommending "a careful researcher/psychological practitioner" to help in establishing Zalewski's claim for disability benefits.

■ The evidence in the record as to Zalewski's physical and mental impairments supports the Secretary's conclusion that Zalewski is able to engage in substantial gainful work. The medical evidence confirms the conclusion that Zalewski can perform sedentary work involving mostly sitting and the occasional lifting of lightweight objects, standing, or walking. Although the doctors indicated that Zalewski would be unable to lift heavy objects, they did not state that Zalewski could not occasionally lift lightweight objects in a sedentary job setting. Even Zalewski testified that he could stand and walk for short periods of time. Since a sedentary job involves mostly sitting and only occasional standing or walking, there is substantial evidence in the record to find that Zalew-

ski's physical impairments do not preclude him from performing a sedentary job.

As to Zalewski's mental impairments, the record supports the ALJ's conclusion that Zalewski's nonexertional limitations do not significantly affect his capacity to engage in sedentary activities. First, the ALJ must refer to the medical-vocational guidelines and grid of 20 C.F.R. Part 404, Subpart P, Appendix 2, in order to determine whether the claimant is disabled based on a combination of four factors: the heaviest type of substantial gainful work that the applicant can do, age, education, and previous work experience. 20 C.F.R. § 404.1569; 20 C.F.R. Part 404, Subpart P, Appendix 2, § 200.00(a) (1984). *See also Heckler v. Campbell*, 461 U.S. 458, 460–62, 103 S.Ct. 1952, 1954–55, 76 L.Ed.2d 66 (1983); *Cummins v. Schweiker*, 670 F.2d 81, 82 (7th Cir.1982). The ALJ must then determine the effect of any nonexertional limitation such as a psychological impairment on the claimant's residual functional capacity as previously determined pursuant to the grid. 20 C.F.R. § 404.1545(d), § 404.1569; 20 C.F.R. Subpart P, Appendix 2, § 200.00(a), (e)(2) (1984).[4] In the present case, although Zalewski was diagnosed as having a passive-aggressive and antisocial personality that might impinge upon his ability to deal with the public, there is substantial evidence to support the conclusion that he was able to engage in sedentary work that entails a minimal amount of interaction with others. For example, the regulations dealing with sedentary work provide that there are approximately two hundred separate unskilled sedentary occupations in the national economy. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 201.-00(a) (1984). Of these two hundred, approximately eighty-five percent of these jobs are in the machine trades and benchwork occupational categories that would not require a high degree of interaction with others. *Id.*[5] Even the vocational counselor, upon whose testimony Zalewski places great weight, stated that he would recommend further analysis by a professional and that Zalewski's antisocial personality "would probably" prevent Zalewski from engaging in activities involving "a high degree" of public contact. In sum, the record contains such relevant evidence that a reasonable mind might accept as adequate to support the conclusion that Zalewski could perform sedentary work.

In addition to arguing that there was insubstantial evidence to sustain the conclusion that he could perform sedentary work, Zalewski also asserts that the ALJ failed to make a proper credibility finding as required by this court in *Zblewski v. Schweiker*, 732 F.2d 75, 78–79 (7th Cir. 1984). Zalewski argues that although the ALJ presented a detailed summary of the medical and vocational evidence, he failed

---

**4.** After referring to the medical-vocational grid, the regulations provide:

> The rules in Appendix 2 do not cover all possible variations of factors. Also, as we explain in § 200.00 of Appendix 2, we do not apply these rules if one of the findings of fact about the person's vocational factors and residual functional capacity is not the same as the corresponding criterion of a rule. In these instances, we give full consideration to all relevant facts in accordance with the definitions and discussions under vocational considerations.

20 C.F.R. § 404.1569 (1984). The Supreme Court has held that the Secretary can rely on the medical-vocational guidelines to resolve certain classes of issues. *Heckler v. Campbell*, 461 U.S. 458, 467–68, 103 S.Ct. 1952, 1957–58, 76 L.Ed.2d 66 (1983). However, the Court also noted that if an individual's capabilities are not described accurately by a rule, the individual's particular limitations must be considered. *Id.* at 462 n. 5, 467–68 n. 11, 103 S.Ct. at 1955 n. 5, 1957–58 n. 11.

**5.** The regulations give further indication that not all sedentary jobs entail a high degree of interaction with others. For example, in referring to such impairments as illiteracy or the inability to communicate in English, the regulations note that such impairments would have little significance for work functions at the unskilled level because such work functions relate to working with things rather than with data or people. 20 C.F.R. Part 404, Subpart P, Appendix 2, § 201.00(i) (1984). The regulation concludes by stating that "the functional capability for a full range of sedentary work represents sufficient numbers of jobs to indicate substantial vocational scope for those individuals age 18–44 even if they are illiterate or unable to communicate in English." *Id.*

to articulate his reasons for rejecting Zalewski's testimony.

In *Zblewski,* this court held that while it was constrained to defer to the credibility determinations of the ALJ as fact-finder, it had to make sure that the ALJ had indeed made such credibility determinations. 732 F.2d at 78. In recognizing the heavy burden placed on ALJs in social security cases, this court emphasized that it would not require the ALJ to evaluate in writing every piece of testimony and evidence submitted. *Id.* at 79. However, the court stressed that a minimal level of articulation by the ALJ as to his assessment of the evidence would be required in cases in which considerable evidence is presented by the claimant to counter the agency's position. *Id.* In *Zblewski,* the claimant's testimony as to his inability to stand or sit for short periods of time without becoming dizzy and his inability to do any lifting following his exposure to carbon monoxide went uncontradicted. *Id.* at 76–78. Furthermore, medical reports by two doctors revealed that the claimant had a serious and deteriorating heart condition that would render him totally incapacitated unless he underwent surgery. *Id.* at 77. The ALJ found that the claimant was not disabled since he could perform sedentary work. *Id.* at 78. In reviewing this decision, this court could only assume that the ALJ had completely rejected the claimant's testimony because the ALJ did not give an explicit and reasoned rejection of the entire line of evidence. *Id.*[6] This court concluded that while there may have been strong grounds upon which the ALJ rejected the claimant's evidence, such a conclusion was not self-evident based on the record. *Id.*

Other cases have also held that an ALJ must offer a minimal articulation of his assessment of the evidence in order to permit the appellate court to review the ALJ's decision. *See, e.g., Halvorsen v. Heckler,* 743 F.2d 1221 (7th Cir.1984) (ALJ offered no explanation for his total rejection of the claimant's uncontradicted testimony, which was supported by extensive medical reports, that her epilepsy rendered her unable to return to work); *Switzer v. Heckler,* 742 F.2d 382 (7th Cir.1984) (ALJ made no finding discounting two doctors' credibility as to their opinion that claimant's breathing was severely restricted when these two doctors' reports were challenged by another report of uncertain origin which denied claimant's disability); *Taylor v. Schweiker,* 739 F.2d 1240 (7th Cir.1984) (ALJ failed to mention and assess two relevant doctors' reports and the claimant's own testimony as to the claimant's significant problems with depression); *Garfield v. Schweiker,* 732 F.2d 605 (7th Cir.1984) (ALJ failed to even mention two subsequent reports prepared by a doctor that claimant's visual limitations were more serious than initially diagnosed); *Cotter v. Harris,* 642 F.2d 700 (3d Cir.1981) (ALJ failed to mention the obviously probative reports of several doctors that claimant could not return to work). '

■ In the present case, however, the ALJ sufficiently articulated his assessment of the evidence in his decision. In his findings, the ALJ stated that Zalewski's allegations of incapacitation and disabling pain for any continuous period of sufficient

---

**6.** This court could only point to the ALJ's use of two hypothetical questions propounded to a vocational expert as a possible rationale for the ALJ's decision that Zblewski was not disabled. *Zblewski v. Schweiker,* 732 F.2d 75, 78 (7th Cir.1984). In the first question, the ALJ asked the vocational expert if Zblewski could engage in gainful work if he had all the pain and limitations that he claimed he had, and the expert responded that Zblewski could not. *Id.* In the second question, the ALJ asked if Zblewski could engage in gainful work if he was unable to stand or walk for prolonged periods, but was able to sit for long periods and had no problems with his vision, tension, or numbness in the fingers. *Id.* The ALJ instructed the expert to exclude Zblewski's testimony as to his nervousness and his ulcer. *Id.* The expert responded that Zblewski would be capable of engaging in sedentary work under those assumptions. *Id.* In view of a lack of any explicit rejection of the claimant's testimony, this court could only conclude that the ALJ had apparently relied on the expert's answer to the second hypothetical in reaching his decision, thereby implicitly rejecting the evidence that the claimant was incapable of sedentary work. *Id.*

duration to permit entitlement to benefits were not supported by the record. The ALJ also concluded that the level of work that Zalewski could do in light of his exertional limitations was not significantly affected by his nonexertional limitations. According to this court in *Zblewski*, it is more than merely helpful for the ALJ to articulate reasons such as a lack of credibility for crediting or rejecting particular sources of evidence. 732 F.2d at 79. According to this court, such articulation is absolutely essential for meaningful appellate review. *Id.* In the present case, the ALJ did not ignore any evidence, but rather presented a thorough and complete picture of the evidence. Furthermore, the ALJ specifically stated that he found Zalewski's testimony not credible by finding that his allegations of incapacitation and pain were not supported by the record. Thus, the ALJ provided an adequate articulation of his reasons for rejecting Zalewski's testimony.

In conclusion, we affirm the district court's decision that there is substantial evidence in the record to support the Secretary's conclusion that Zalewski was capable of sedentary work and thus not entitled to disability benefits and supplemental security income.