**Casey OSTROWSKI, Plaintiff,**

v.

**Margaret HECKLER, Secretary of Health and Human Services, Defendant.**

**No. 84 C 1908.**

United States District Court, N.D. Illinois, E.D.

May 6, 1985.

Donald A. Shapiro, Chicago, Ill., for plaintiff.

Tom Walsh, Asst. U.S. Atty., Chicago, Ill., for defendant.

## MEMORANDUM OPINION AND ORDER

ASPEN, District Judge:

Casey Ostrowski seeks judicial review of the decision of the Secretary of Health and Human Services ("the Secretary") denying him disability benefits under Titles II and XVI of the Social Security Act. 42 U.S.C. § 401 *et seq.* (Title II or "SSDI"); § 1381 *et seq.* (Title XVI or "SSI"). The parties have filed cross-motions for summary judgment. Because the decision of the Secretary contains errors of law and is not supported by substantial evidence, we vacate the denial of benefits and remand for further proceedings.

### I.

The following is a brief summary of the facts as revealed by the administrative record. We will develop other facts as they become relevant to the legal issues raised by Ostrowski's appeal.

Ostrowski is now 41 years old. From 1966 to 1980 he worked at several jobs, including bus driver, medical courier, and production control. He held most of his jobs for no more than a few months each, and has not worked since February, 1980. He claims he is disabled because of severe back pain and of severe psychological problems. Both problems have a long history.

He first had back surgery, a "lumbar laminectomy," in 1975. In late 1980 he exacerbated his condition, and was experi-

encing severe pain. In January, 1981 he had a second laminectomy at Lakeside V.A. Hospital for a herniated nucleus pulposus at L4–L5. While his condition admittedly improved following this operation, he continued to experience recurrent severe pain, and was admitted to Lakeside V.A. in June, 1981, and was treated again for pain in August, 1982, but there was no evidence then of radiculopathy or sciatica. His examination in August, 1981 by the Consultative Examiner hired by the Secretary revealed degenerative disc disease at L4–L5 and minimal osteoarthritis. He could walk with a slight limp for about two blocks, had good muscle strength, and somewhat limited flexibility. None of the various doctors who examined him expressed doubt that Ostrowski was experiencing pain or that this pain lacked a basis in an observable medical condition.

Ostrowski testified at his Administrative Law Judge ("ALJ") hearing on October 27, 1982 that his back pain is severe and is felt in his neck and legs as well. He generally does not leave his house for more than a few hours at a time; does very little housework; cannot sit for more than two or three hours; and has difficulty driving, bending or stooping. He spends much of his time watching television. At other times during the last few years he had been able to do some housework and driving. His pain appears to have been varied in severity.

Ostrowski's emotional problems have also lasted many years. He has been in and out of mental institutions at least ten times since 1965. That year he was hospitalized for a type of paranoid psychosis. In 1968, he was hospitalized for "a nervous breakdown." In 1971 and 1973, he was hospitalized for depression. In 1974 he was treated for an unknown psychiatric disorder. In 1979 he was again hospital-

ized for depression, and a second time for an unknown disorder. In February, 1980 he was hospitalized for bipolar affective disorder, and again in June, 1980 for an unknown disorder. In September, 1980 he was hospitalized for two months for bipolar affective disorder. In 1982 he was treated as an outpatient for severe depression. During the past twenty years he has received sporadic psychotherapy.

The most detailed evidence of his psychiatric problems is contained in the records of his September, 1980 hospital admission and his October, 1981 examination by a consultative examiner, Dr. Benson, hired by the Secretary: When admitted to the hospital in 1980 he was alert and not hallucinatory, but was suicidal with moods rapidly shifting from depressed to anxious. When discharged in November, 1980 he was alert, coherent, non-psychotic, and non-suicidal, but was still depressed and mildly anxious with poor insight and judgment. In October, 1981 Dr. Benson opined that Ostrowski was dreamy but not overly psychotic; that he had had significant psychotic symptoms in the past; that he had a major affect disorder in current remission; that he could perform routine repetitive tasks, follow orders, and respond to normal work pressures. He was not suicidal, hallucinatory, delusional or depressed during that visit.

■ Ostrowski applied for SSI and SSDI[1] benefits in July, 1981. In August and September of 1981 his claims were denied initially, and the denials were affirmed on reconsideration in February, 1982. A *de novo* hearing before an ALJ was held in October, 1982, and the ALJ issued an opinion denying the SSDI claim in February, 1983. The Appeals Council affirmed this denial but remanded the matter to the ALJ because he had not ruled on Ostrowski's SSI claim. On December 29,

**1.** Both disability programs, SSI and SSDI, establish the same legal standard for disability. *See* 42 U.S.C. § 423(d)(1)(A) (SSDI); 42 U.S.C. § 1382c(a)(3)(A) (SSI). The differences between the programs are not medically-related and are not directly relevant to this case. SSI is essentially a welfare-benefits program, provid-

ing income to disabled people whose income and resources fall below a prescribed level. SSDI is essentially an "insurance" program, providing benefits to disabled people who have met certain earnings requirements in their work history.

1983, the ALJ denied the SSI claim in an opinion mirroring his earlier one. The Appeals Council affirmed. This suit for judicial review followed.[2]

## II.

▅▅ A person is "disabled" under the Social Security Act if he cannot "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A)(SSDI). The Secretary uses a five-step inquiry in deciding whether a claimant is disabled. The Seventh Circuit has stripped the process of its regulatory jargon and nuances, summarizing it as follows:

> (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than point 3, stops inquiry and leads to a determination that the claimant is not disabled.

*Halvorsen v. Heckler,* 743 F.2d 1221, 1225 (7th Cir.1984), *quoting, Garfield v. Schweiker,* 732 F.2d 605, 607 n. 2 (7th Cir.1984); *see also* 20 C.F.R. § 404.1521 (1984). In reviewing the Secretary's application of this process, we must uphold her decision as long as her factual findings are supported by substantial evidence and she used the correct legal standards. *E.g., Halvorsen,* 743 F.2d at 1225. "Substantial evidence" means "such relevant evidence as a 'reasonable mind accept[s] as adequate to support a conclusion," considering the record as a whole. *E.g., Taylor v. Schweiker,* 739 F.2d 1240, 1241 (7th Cir. 1984), *quoting, Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). The "substantial evidence" standard requires the Secretary to base her decision on a careful consideration of *all* the relevant evidence; she cannot single out those fragments of the record which tend to support her conclusion. *Switzer v. Heckler,* 742 F.2d 382, 385–86 (7th Cir.1984); *Taylor,* 739 F.2d at 1243; *Garfield,* 732 F.2d at 609–10. In reviewing the ALJ's decision we should consider: (1) the clinical findings of treating and examining physicians; (2) the diagnoses of those physicians; (3) the subjective evidence of pain and disability as testified to by the plaintiff and as observed by others; and (4) the claimant's educational background, work history, and present age. *Whitney v. Schweiker,* 695 F.2d 784, 786 (7th Cir.1982). With these basic principles in mind, we turn to the Secretary's treatment of Ostrowski's claim.

## III.

In evaluating Ostrowski's claim, the ALJ considered his back condition and mental condition separately. He determined first that Ostrowski's back condition was not severe enough to meet or equal the "listed impairments" ("the listings") of the regulations.[3] He thus held that Ostrowski did not pass step 3 of the five-step inquiry

---

**2.** Actually, the suit was filed shortly before the Appeals Council issued its second decision. In an earlier unpublished opinion we dealt with the jurisdictional problems raised by the splitting of the SSI and SSDI claims. *See Ostrowski v. Heckler,* No. 84 C 1908 (N.D.Ill. Nov. 16, 1984).

**3.** Ostrowski claims that his back condition meets or equals Listed Impairment No. 1.05C, which provides:

> 1.05 Disorders of the spine:

> C. Other vertebrogenic disorders (e.g., herniated nucleus pulposus, spinal stenosis) with the following persisting for at least 3 months despite prescribed therapy and expected to last 12 months. With both 1 and 2:
>   1. Pain, muscle spasm, and significant limitation of motion in the spine; and
>   2. Appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss.

> 20 C.F.R. Part 404 (Appendix 1), § 1.05C (1984).

outlined above.[4] The ALJ next concluded that "could sit, stand or walk for 6 to 8 hours per day" and thus had the "residual functional capacity" to return to several of his previous jobs, such as medical courier or production controller. As such, Ostrowski had failed to pass step 4 of the inquiry and was denied benefits. The ALJ next determined that Ostrowski's emotional illness did not "significantly limit his ability to perform basic work-related functions for any period of 12 consecutive months ..." This amounted to a conclusion that Ostrowski failed to pass step 2 of the inquiry, i.e., his mental impairment was not severe.[5] *See* 20 C.F.R. § 404.1521(a) (1984) (impairment not severe if it does not significantly limit physical or mental abilities to do basic work activities). The Court concludes that neither conclusion of the ALJ is supported by substantial evidence.

The ALJ made his most glaring error in analyzing the mental impairment claim. Although acknowledging that Ostrowski has a long history of emotional illness, the ALJ focussed on two snapshots of that history—the November 1980 report of the discharge from a mental hospital and the October 1981 consultative exam of Dr. Benson—in concluding that Ostrowski's mental impairment was not severe. In so doing, the ALJ failed to consider the record as a whole. He makes no mention of and does not consider the evidence of Ostrowski's

ten or so hospitalizations over a period of about 18 years. He also does not address the obvious fact that Ostrowski apparently did not hold down a job for more than a few months at a time. These facts, combined with his testimony, suggest that Ostrowski's mental impairment is far more severe than acknowledged by the ALJ. *Cf. Halvorsen,* 743 F.2d at 1226 (error for ALJ to not address evidence concerning why claimant lost previous jobs). Given the 18 year history of repeated hospitalizations, we think the ALJ placed too much weight on the opinion of Dr. Benson, who saw Ostrowski only one day during a period of remission.[6] The ALJ should not have relied on that report without fully considering and evaluating the other evidence of multiple hospitalizations.

The ALJ's treatment of the November, 1980 report underscores the selective focus of his inquiry. He first erroneously stated that the report was dated September, 1980. That was the month Ostrowski was *admitted* to the hospital. The ALJ does not mention that the *November,* 1980 report upon which he relies followed two months of hospitalization. The ALJ did not describe or consider Ostrowski's condition in September, even though it is detailed in that report. While the report states that Ostrowski was alert and not delusional or suicidal in November when discharged, it

---

4. The ALJ did not specify whether Ostrowski met step 2, i.e., whether his back impairment was "severe." Since he reached step 3, we assume that he found that Ostrowski's back condition was severe, since that finding is a prerequisite to considering the Listed Impairments.

5. That is why, we assume, the ALJ did not consider whether Ostrowski met one of the Listed Impairments or, if not, whether he had the "residual functional capacity" to work. Ostrowski claims that his mental condition meets or equals Listed Impairment No. 12.03, which provides:

    12.03 Functional psychotic disorders (mood disorders, schizophrenias, paranoid states). With both A and B:
    A. Manifested persistence of one or more of the following clinical signs:
      1. Depression (or elation): or
      2. Agitation; or
      3. Psychomotor disturbances; or

      4. Hallucinations or delusions: or
      5. Autistic or other regressive behavior; or
      6. Inappropriateness of affect; or
      7. Illogical association of ideas;
    B. Resulting persistence of marked restriction of daily activities and constriction of interests and seriously impaired ability to relate to other people.
20 C.F.R. Part 404 (Appendix 1), § 12.03 (1984).

6. Were Ostrowski consistently like he appears in his description in Dr. Benson's report, we would not hesitate to uphold the ALJ's findings that his disability is not severe. But the record as a whole shows that Ostrowski's condition is uneven. He undeniably is often not as lucid as he was at Dr. Benson's office, as his ten hospitalizations suggest. The ALJ cannot merely rely on Dr. Benson's snapshot of Ostrowski. He must consider that "picture" in the context of all the evidence to evaluate Ostrowski as a whole person.

also states that he was suicidal, severely depressed and anxious in September when admitted. The ALJ focussed only on the half of the report that supported his conclusion, not the whole report, just as he selected only part of the record to base his decision on.

■ As we noted earlier, the Seventh Circuit has repeatedly held that an ALJ must consider all of the relevant evidence, including that which counters his ultimate conclusion. *E.g., Zalewski v. Heckler,* 760 F.2d 160, 166–167 (7th Cir.1985); *Garfield,* 732 F.2d at 609–10; *Zblewski v. Schweiker,* 732 F.2d 75, 78–79 (7th Cir.1984). He need not discuss every piece of evidence and testimony; but he "must articulate at some minimal level his analysis of the evidence in cases where considerable evidence is presented to counter the agency's position." *Garfield,* 732 F.2d at 609. On remand the ALJ must consider the reports he relied on in the context of all of the relevant evidence in the record. The ALJ should consider Ostrowski's claim in the context of two decades of hospitalizations, not in the context of two days of relative lucidity.[7] In reviewing the whole record, the ALJ should also consider Ostrowski's testimony concerning his difficulties dealing with stress in previous jobs, as well as with his family. If he rules against Ostrowski, he should either make a credibility determination or articulate how his testimony weighs in the context of the record as a whole. *See Zblewski,* 732 F.2d at 78 (ALJ must explicitly and reasonably reject claimant's testimony concerning pain if he is to deny benefits); *Halvorsen,* 732 F.2d at 1226 (ALJ must articulate grounds for rejecting testimony supporting claimant's case).

■ In sum, we hold that the ALJ's conclusion that Ostrowski's mental impairment was not severe is not supported by substantial evidence in the whole record. We express no opinion on the ultimate issues of whether Ostrowski's impairment is in fact severe, whether it meets or equals the listings of impairments, or, if not, whether he has the residual functional capacity to work. That is for the Secretary to determine as an initial matter on remand after consideration of *all* relevant evidence and factors described above.

■ The ALJ made similar errors of omission in assessing Ostrowski's claim of back impairment. Were the ALJ able to rely only on the medical reports in the record, we would probably uphold his finding of no disability. We need not reach this issue because he again neglected to consider *all* of the relevant evidence in the record.[8] Most significantly, the ALJ did not explicitly evaluate Ostrowski's considerable testimony concerning his back pain.

---

7. In view of these concerns, it might be appropriate (although we leave the decision to the Secretary) to have another consultative exam, which focusses not only on Ostrowski's condition on the day of the visit, but also on his history of recidivism and how that bears on his ability to engage in substantial gainful activity. A claimant who can hold down a job for a short period does not necessarily engage in "substantial gainful activity." *See, e.g., Halvorsen,* 743 F.2d at 1226–27. In that case, the Court held that the ALJ had attached too much weight to the claimant's ability to work for periods of three months or so. The ability to engage in substantial gainful activity implies the ability to hold down a job for longer than a few months at a time. Ostrowski's recurring mental problems, as well as his fluctuating back pain, when combined with his sporadic work history, suggest that his ability to work does not last more than a few months at a time, if that long. The ALJ should consider these factors on remand.

8. Moreover, the ALJ misconstrued certain evidence. For example, in concluding that Ostrowski could perform "light work," the ALJ relied in part on a report of one of Ostrowski's treating physicians who (according to the ALJ) released Ostrowski in June, 1981 from the hospital with the opinion that "he could perform light work and he had recovered from his surgery." What the doctor actually wrote was that Ostrowski "is now able to resume light *activities*" (emphasis added). This is a far cry from an opinion that he could perform "light work." And while Ostrowski undoubtedly improved following that visit to the hospital, the doctor did not indicate that he had "recovered." Of course, this particular error of the ALJ's is slight by itself. But taken together with his selective focus in other areas of his analysis, the error reinforces our conclusion that he did not review the whole record with the care it deserves.

Ostrowski testified that he regularly feels severe pain in his back, neck, and legs. Sometimes he cannot sit or stand for extended periods in one spot, and needs to lie down. It is clear that his testimony, if credible, suggests that his back ailment would significantly impair his work related functions. In finding that Ostrowski failed to meet the listed impairments, the ALJ did not explicitly factor Ostrowski's testimony of pain into his analysis. It could be (although from the record we cannot tell) that Ostrowski's pain is so severe that he "equals," if not "meets," the listings. Under the regulations, a person can be found disabled if his condition substantially equals, rather than precisely meets, the listed impairment. *See* 20 C.F.R. § 404.-1521(d); § 404.1526 (1984) [9] However, the ALJ did not explicitly evaluate the pain factor, and therefore implicitly decided that Ostrowski's complaints of severe pain were not substantial or credible enough to warrant a finding that he met or equalled the listings. Even if Ostrowski did not equal the listings, the ALJ's subsequent finding that he could perform his past jobs because he "could sit, stand or walk" for 6 to 8 hours per day also did not take his complaints of pain into account. In reaching his decision, the ALJ, without explaining why, implicitly rejected or discounted Ostrowski's testimony, which, if all true, indicated that he could not meet the demands of his previous jobs. As we noted earlier, such gaps in the ALJ's analysis warrant reversal and remand of the decision denying benefits. *See Taylor*, 739 F.2d at 1243–44 (ALJ erroneously ignored claimant's testimony regarding her limitations); *Zblewski*, 732 F.2d at 78–79 (ALJ erroneously ignored claimant's testimony concerning pain and other symptoms).

Our decision concerning Ostrowski's complaints of pain is in harmony with the regulations and the new Disability Reform Act of 1984, Pub.L. No. 98–460, 98 Stat.

1794 (enacted October 9, 1984) ("Reform Act"), which created the following standard for evaluating pain:

> An individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section; there must be medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonably be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under the paragraph (including statements of the individual or his physician as to the intensity and persistence of such pain or other symptoms which may reasonably be accepted as consistent with the medical signs and findings), would lead to a conclusion that the individual is under a disability. Objective medical evidence of pain or other symptoms established by medically acceptable clinical or laboratory techniques (for example, deteriorating nerve or muscle tissue) must be considered in reaching a conclusion as to whether the individual is under a disability.

Reform Act, § 3(a)(1) (amending 42 U.S.C. § 423(d)(5)). This standard will be in effect until at least January 1, 1987. *Id.,* § 3(a)(3). This pain standard was intended to codify the Secretary's existing regulations concerning pain, i.e., 20 C.F.R. §§ 404.1529, 416.929 (1984). *See* S.Rep. No. 466, 98th Cong., 2d Sess. 24 (1984). It supersedes inconsistent existing case law. *See generally* S.Rep. No. 466, *supra* at 23–24; H.R.Rep. No. 618, 98th Cong., 2d Sess. 28–29 (1984), U.S.Code Cong. & Admin.News 1984, pp. 3038, 3065 (Conference Committee Report); 131 Cong.Rec. S11458

---

**9.** In determining "medical equivalence" the Secretary considers the patient's symptoms, signs, and laboratory findings." 20 C.F.R. § 404.-1526(a) (1984). "Symptoms" include complaints of pain, which must be based in "signs" or "laboratory findings" to be considered in determining medical equivalence. *See* 20 C.F.R. §§ 404.1528, 1529 (1984). We discuss the consideration of pain in more detail below at 1116–1117.

(daily ed. Sept. 19, 1984) (remarks of Sen. Long on pain issue).

■ In this case it is quite likely that Ostrowski's subjective complaints of pain are grounded, as they must be, in "medical signs and findings ... which show the existence of a medical impairment that results from anatomical ... abnormalities which could reasonably be expected to produce the pain ... alleged." Reform Act, § 3(a)(1). Ostrowski's back ailments are well documented, requiring surgery more than once to correct a herniated nucleus pulposa. Several doctors have prescribed drugs for the pain, which suggests that they believe the pain is real and grounded in objective medical evidence. No evidence suggests that any doctor doubted Ostrowski's reports concerning his pain, either before or after the surgery. The consultative examination by Dr. Bacalla, which occurred well after Ostrowski's last surgery, revealed that Ostrowski still had degenerative disc disease and osteoarthritis. The upshot of this and other evidence we have not mentioned is that Ostrowski's pain appears to have a solid basis in objective medical findings. The Reform Act states, the issue of "objective medical evidence of pain ... must be considered in reaching a conclusion as to whether the individual is under a disability." *Id.* On remand the ALJ should determine whether the intensity and persistence of Ostrowski's pain [10] is reasonably consistent with the medical evidence, and if it is, whether the pain in combination with all the other evidence

warrants a conclusion that Ostrowski equals the listings or lacks the residual functional capacity to perform his previous jobs or other work in the national economy. The ALJ improperly failed to factor Ostrowski's complaints of pain into his findings that Ostrowski is not disabled. The ALJ must do so on remand, and determine anew whether Ostrowski is disabled.

■ Although the issue was not mentioned by the parties, we note for purposes of guidance to the ALJ that he also did not consider whether the *combination* of Ostrowski's back and mental impairments rendered him disabled.[11] The regulations required the ALJ to consider the combined effects of "unrelated" impairments if each was "severe" by itself. *See* § 404.1522 (1984); § 404.1526(a) (1984) (combine to determine if claimant equals listings); § 404.-1545(a) (1984) (combine to determine if claimant lacks residual functional capacity to work). It might be that the ALJ did not combine Ostrowski's impairments because he considered them "unrelated" and the mental one not "severe." Under the Reform Act, the ALJ *must* consider the combined effects of unrelated impairments even if each is not "severe" in isolation. *See* Reform Act, Sec. 4(a)(1).[12] That section reflects the common sense notion that a claimant is a whole person with a range of problems, and must be considered as such. Thus, under the new Act Ostrowski should not be split (as he was) into a "back case" and a "psychiatric case" without re-

---

**10.** Like Ostrowski's psychiatric ailments, his back pains appear to grow and subside periodically. Thus, the ALJ should consider the whole record of pain, not a snapshot approach, as we ruled above in connection with the psychiatric claim.

**11.** In the last paragraph of his opinion the ALJ does use the word "combination." But we see no evidence that he did combine the two impairments. Nor did he combine the impairments in doing his "residual functional capacity" analysis.

**12.** That Act provides in relevant part:

In determining whether an individual's physical or mental impairment or impairments are of a sufficient medical severity that

such impairment or impairments could be the basis of eligibility under this section, the Secretary shall consider the combined effect of all of the individual's impairments without regard to whether any such impairment, if considered separately, would be of such severity. If the Secretary does find a medically severe combination of impairments, the combined impact of the impairments shall be considered throughout the disability determination process.

Pub.L. 98–460, Sec. 4(a)(1). While this standard was obviously not in effect when the ALJ first ruled on this case, it will be in effect on remand. *See* Reform Act, Sec. 4(c) (section effective for determinations made on or after December 1, 1984, first day of first month beginning 30 days after passage of Act).

gard to the fact that he suffers from both ailments at the same time. In tandem the ailments might render him "disabled" while each one in isolation might not.

■ Even under the old standard, the ALJ probably erred in not considering the combined effects of Ostrowski's impairments because the two are not necessarily "unrelated." In reviewing Ostrowski's testimony we noticed that his back condition might exacerbate his mental impairment and vice versa. For example, he testified in more than one place that his bad back is one of the things contributing to his severe depression. Similarly, he apparently uses his back pain to discount the other causes of his depression: a May 26, 1981 report of a psychologist, Dr. Choca, states that throughout Ostrowski's hospitalization he "kept wanting to see all of his problems as resulting from the back pain." Indeed, this doctor opined that Ostrowski's psychological problems in turn exacerbated the extent of his perceived back pain. In sum, there appears to be a feedback between Ostrowski's two impairments, which the ALJ should consider on remand.[13]

### IV.

For the foregoing reasons, the Secretary's decision to deny Ostrowski disability benefits is not supported by substantial evidence in the record as a whole. We therefore reverse her decision, and remand this case for further proceedings consistent with this opinion. It is so ordered.

---

**13.** We need not decide whether under the old regulations the ALJ erroneously failed to combine the impairments and consider this feedback, since we are remanding the case for other reasons. However, on remand he must now combine the impairments under the Reform Act.