Maxine B. SCHMOLL,
Plaintiff-Appellant,

v.

Patricia R. HARRIS, Secretary of Health and Human Services (Formerly Secretary of Health, Education and Welfare), Defendant-Appellee.

No. 80–1635.

United States Court of Appeals,
Seventh Circuit.

Argued Sept. 23, 1980.
Decided Dec. 23, 1980.

Tony H. Abbott, Indianapolis, Ind., for plaintiff-appellant.

Harold R. Bickham, Asst. U. S. Atty., Indianapolis, Ind., for defendant-appellee.

Before CUMMINGS and WOOD, Circuit Judges, and CAMPBELL, Senior District Judge.*

WILLIAM J. CAMPBELL, Senior District Judge.

The issue in this appeal is whether the Secretary's denial of plaintiff's application for disability benefits is supported by substantial evidence. We believe the record does not support the Secretary's finding that plaintiff's use of Librium does not preclude her from engaging in substantial gainful employment. Accordingly, we reverse and remand for further proceedings.

Claimant, Maxine Schmoll, was born on June 15, 1921. She received a high school education before entering the work force in 1938. Claimant's employment history is almost exclusively in quality control areas of manufacturing. Her early employment included: assembling fly swatters; weighing and checking cans of meat at a meat-packing plant; inspecting the seams on cargo parachutes; and examining ball bearings and prisms for defects. In 1944 she began work at the Eli Lilly plant in Indianapolis, Indiana. At Eli Lilly she sorted, inspected and labeled pill bottles until September 1971. At that time she ceased working, complaining of arthritis in the neck, severe pain in her left shoulder and left leg, and a recurring numbness in her hands and arms.

Claimant's health problems began with abdominal cancer surgery in 1965. She was hospitalized for a period of two and one-half months, and was unable to work for more than eight months. After returning to work, Claimant was able to work a half day for several months. When she resumed

---

* The Honorable William J. Campbell, Senior District Judge for the Northern District of Illinois, is sitting by designation.

working full time, her doctor requested that she be permitted to lie down for two hours during the day, which Eli Lilly agreed to.

Claimant was hospitalized again in 1970. She testified that the reason for her hospitalization was "another blackout spell." She was hospitalized for approximately two weeks at the direction of her doctor. In September 1971, claimant took an extended disability leave, and was retired by Eli Lilly on May 1, 1974. There is no dispute that the crucial date for eligibility for social security benefits is September 30, 1976.

Claimant first filed for disability insurance benefits on February 14, 1972. That application was denied, as was a subsequent application on May 22, 1974. No hearing was held on either application, and the denials appear to be based solely on interviews with Social Security personnel. On August 4, 1976, claimant filed this application for disability. She requested a hearing, which was held on January 24, 1978 at Indianapolis before an Administrative Law Judge (ALJ). On April 10, 1978, the ALJ entered findings in which he determined that claimant was "not under a disability, as defined in the Act."

▮ In order to establish eligibility for disability benefits, claimant must show that she is unable;

"... to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairments which can be expected ... to last for a continuous period of not less than twelve months ..." 42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 404.1501(a)(1).

Whether a particular impairment, either physical or mental, is disabling will depend on all the pertinent facts, such as: vocational skills, age, education, prior experience, an individual's residual functional capacity, and the demand for the kinds of work the individual is capable of performing. 20 C.F.R. § 404.1502.

In the instant case, claimant was not represented by counsel until after the ALJ rendered an adverse decision. Her contentions as to disability were prepared without the benefit of legal counsel. Since she was not represented by counsel at the hearing before the ALJ, claimant's ability to present her case and rebut the evidence adverse to her was quite limited.

Upon review of the record in the case, counsel for the claimant contacted the Appeals Council in the Social Security Administration on June 23, 1978. Counsel's letter indicated that, based on his conversations with claimant, crucial arguments and theories of disability had not been raised or in any way developed at the hearing before the ALJ. In his subsequent letter of November 13, 1978, counsel for claimant made reference to a medical report which referred to "a combination of physical and mental impairments" which give rise to a disabled condition. He noted, however, that the "emotional aspects" of the claimant's case had been entirely overlooked. Counsel specifically referred to Mrs. Schmoll's continued use of Librium since 1967 or 1968, with particularly heavy dosages in 1970 and 1971. Counsel for claimant submitted to the Appeals Council statements from her doctors which indicated that she had been taking Librium since May of 1967.

While claimant's treatment with Librium was mentioned in her medical histories and at the hearing before the ALJ, it was never the central focus of her disability claim. This is, at least in part, a result of claimant's lack of effective representation at the initial stage of the administrative process. Yet, there is considerable evidence in the record of claimant's regular use of Librium and its adverse effect on her. Claimant testified at the hearing that she was taking 50 milligrams of Librium at that time and had been taking as much as 100 milligrams per day at one time. Janet Evans, claimant's niece, testified that Mrs. Schmoll "very definitely cannot live without [Librium]"; that she had tried unsuccessfully to "withdraw" from regular Librium use; and that it was "a bad scene." The remaining witness at the hearing was James A. Wolf, a certified rehabilitation counselor with over twenty years experience in his field. Mr. Wolf testified that, based on his review

of claimant's work history and medical records, his opinion was that she could perform some sedentary inspection work, probably in the jewelry or electronics field. Yet, Mr. Wolf further testified that his conclusion did not take into account the Librium she was taking, and that such a high dosage would definitely limit her in the types of work she could perform. Unfortunately, the ALJ did not pursue this line of questioning. When Mr. Wolf concluded his testimony, the following colloquy took place:

> CLAIMANT: Sir, could I ask a question?
>
> ALJ: No. No. Wait just a minute. I want to go back to you, Mrs. Schmoll.

At that point, the ALJ recalled Mrs. Schmoll to the stand and permitted her to make a further statement on her behalf. She was not afforded an opportunity to cross-examine Mr. Wolf regarding his testimony.[1]

Claimant's medical history corroborates her testimony regarding Librium use. In her first Medical History and Disability Report filed with the Social Security Administration on February 14, 1972, claimant included in her list of treatment: "Librium 25 mg. 4 times a day." In a subsequent report filed on September 19, 1972, she again indicated she was being treated with Librium. Also, Social Security Administration interviewers noted that "medicine made her sleepy" and "her eyes looked glassy, like she is on a lot of medicine."

The ALJ's findings as to claimant's Librium use, and its potential effect on her are ambiguous and even conflicting. After reviewing claimant's physical ailments the ALJ states: "A review of the medical evidence does not reveal that as of September 1976, the claimant's medications included Librium." Yet, the ALJ concludes his discussion by specifically finding "that the claimant's residual functional capacities prior to September 30, 1976 would not be effected [sic] by heavy dosages of Librium."

Claimant sought review of these findings by the Social Security Administration Appeals Council pursuant to 20 C.F.R. § 404.945. In doing so, counsel for claimant submitted the two statements by claimant's treating physicians indicating consistent use of Librium since as early as May 8, 1967.[2] The Appeals Council was apparently persuaded that claimant had, in fact, been taking significant amounts of Librium at the time she ceased working. However, the Council affirmed the ALJ's finding on the ground that, "the additional evidence does not show that your medication produces such adverse reactions as to preclude you from engaging in substantial gainful activity." The Appeals Council's decision was dated December 7, 1978, the day after claimant's additional evidence was made a part of the record. There was apparently no request for oral argument by claimant, though the Agency regulations do provide for such requests. *See* 20 C.F.R. § 404.948(c). Claimant then sought judicial review of the Appeals Council's decision by the filing of a complaint on April 6, 1979. *See* 42 U.S.C. § 405(g); 20 C.F.R. § 422.210.[3]

In reviewing the Secretary's findings as to disability, a District Court's role is limited to a determination of whether those findings are supported by substantial

---

1. After inquiring of Mrs. Schmoll regarding any objections to exhibits, the ALJ said: "Now, yes, you may ask." Since Mr. Wolf was no longer the witness—and Mrs. Schmoll was—it appears that the ALJ was permitting her to ask him a question, rather than cross-examine Mr. Wolf. Clearly, Mrs. Schmoll did not interpret this as an opportunity to cross-examine Mr. Wolf, as she simply made a short statement regarding the circumstances surrounding her retirement from Eli Lilly.

2. These statements were by Doctor E. K. Stucky, claimant's personal physician, and Dr. Francis W. Price, Director of Industrial Medicine at Eli Lilly and Company in Indianapolis. Social Security Regulations permit the introduction of additional evidence before the Appeals Council so long as it is relevant and material to the issue in the case. 20 C.F.R. § 404.949(a). That evidence was received and made a part of the record by order of the Council on December 6, 1978.

3. Plaintiff's action was not filed within the statutory 60 day period. However, the action was filed within the extension of time granted by the Secretary.

evidence. *Rayborn v. Weinberger*, 398 F.Supp. 1303, 1308 (N.D.Ind.1975). This Court's standard of review is also whether the Secretary's factual findings are supported by substantial evidence. *Davis v. Califano*, 603 F.2d 618, 625 (7th Cir. 1979). The "clearly erroneous" standard for review of a trial court's factual finding under Fed. R.Civ.P. 52(a) is not applicable because the findings under scrutiny are those of the Secretary rather than the district court. *McNeil v. Califano*, 614 F.2d 142, 145 (7th Cir. 1980). Substantial evidence has been defined as "such evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971). When the Secretary or the district court commits an error of law, reversal is, of course, warranted irrespective of the volume of evidence supporting the factual findings.

The Secretary's finding with regard to potential disability from claimant's arthritis and limited use of her shoulder is not challenged by appellant. Rather, claimant attacks the Secretary's findings with respect to the effect of Librium on her ability to engage in substantial gainful activity. That finding—as articulated by the Appeals Council—is that while claimant was being treated with Librium, the evidence did not show that this medication produced such adverse reactions as to preclude her from engaging in substantial gainful activity.

An addiction to a drug can, by itself, serve as a basis for disability. 20 C.F.R. Subpart P, Appendix 1, § 12.00(B)(3)(c). However, appellant's theory of disability apparently relies on a combination of factors, the cumulative effect of which is to render her unable to engage in substantial gainful activity. The discomfort caused by her various physical ailments, together with a treatment which also affects her ability to work, allegedly renders her disabled.[4] Irrespective of which theory is asserted, the Secretary's findings as to the effects of Librium must be supported by substantial evidence. Our review of the record reveals virtually no evidence to support the finding of the Appeals Council with respect to its effect on the claimant's ability to work.

The only evidence which even addresses the question of how claimant's use of Librium affected her was developed at the hearing before the ALJ. The testimony of claimant's niece, Janet Evans, suggests that Librium has a severe negative effect on Mrs. Schmoll. Ms. Evans stated that claimant "cannot live without it . . . it's really a bad scene for her." Mr. Wolf, the vocational expert, testified that claimant's physical ailments would not preclude her from engaging in certain types of sedentary employment. Yet, Mr. Wolf acknowledges that, in reaching this opinion, he was not aware that claimant was taking up to 100 milligrams of Librium per day. When asked if his opinion would change taking into account the amount of Librium she was taking, he responded that it would. The final relevant factor is that Eli Lilly retired claimant early. The reasonable inference from that action is that her employer considered her unable to engage in any form of employment available at that company.

This is hardly overwhelming evidence of disability. Yet, it is the only evidence in the record addressing the effect of Librium on claimant's ability to work. Had this issue been more fully developed by competent legal counsel, the record would undoubtedly be more enlightening. Indeed, had the ALJ permitted Mrs. Schmoll to cross-examine Mr. Wolf as he is required to do under Agency Regulations,[5] the hearing would have been far more fruitful in resolving this disability claim.

■ The Secretary's findings must be supported by substantial evidence. 42

---

4. It is not entirely clear that claimant relies on the cumulative theory of disability. Yet, claimant's unwillingness to rely solely on the provisions relating to drug addiction leaves that impression. Claimant will hopefully clarify that aspect of the case on remand.

5. 20 C.F.R. § 404.929 provides in pertinent part:
   The presiding officer may examine the witnesses and shall allow the parties or their representatives to do so . . .

U.S.C. § 405(g). The Secretary's finding that claimant's continued use of Librium has no effect on her ability to engage in any substantial gainful activity is without *any* evidentiary support in the record. Moreover, the ALJ's refusal to afford claimant the opportunity to cross-examine a crucial witness raises serious doubts as to the constitutional adequacy of these proceedings.[6]

We therefore reverse the District Court's entry of summary judgment with directions that the case be remanded to the Secretary to conduct a further hearing. The Secretary should resolve the question of the effect of claimant's Librium use—either by itself or in conjunction with other physical ailments—on her ability to engage in substantial gainful activity. The Secretary shall afford claimant's counsel an adequate opportunity to obtain additional medical evidence, so that claimant is afforded a full and fair opportunity to present her case.

REVERSED AND REMANDED.

---

**6.** Because we find the Secretary's findings so lacking in evidentiary support, we do not reverse on constitutional grounds. Yet, the inadequacy of the hearing raises a serious due process issue. *See Goldberg v. Kelly*, 397 U.S. 254, 269, 90 S.Ct. 1011, 1021, 25 L.Ed.2d 287 (1970).