**Joan P. JOHNSON, Plaintiff,**

v.

**Otis R. BOWEN, Secretary of Health and Human Services, Defendant.**

**Civ. No. F 87–127.**

United States District Court,
N.D. Indiana,
Fort Wayne Division.

Dec. 3, 1987.

Barkan & Neff, Columbus, Ohio, Floyd Ramsier, Fort Wayne, Ind., for plaintiff.

---

David H. Miller, Asst. U.S. Atty., Fort Wayne, Ind., for defendant.

## ORDER

WILLIAM C. LEE, District Judge.

This is an action for judicial review of a final decision of the defendant Secretary of Health and Human Services denying plaintiff's application for the establishment of a period of disability under section 216(i) of the Social Security Act and for disability insurance benefits as provided by section 223 of the Act. 42 U.S.C. § 416(i); 42 U.S.C. § 423. Section 205(g) of the Act provides, *inter alia,* "[a]s part of his answer, the Secretary shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the case for a rehearing." It also provides, "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." 42 U.S.C. § 405(g).

The law provides that an applicant for disability insurance benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months...." 42 U.S.C. § 416(i)(1); 42 U.S. C. § 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). It it not enough for plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff,* 307 F.2d 840 (4th Cir. 1962); *Garcia v. Califano,* 463 F.Supp. 1098 (N.D.Ill.1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plain-

tiff. *See Jeralds v. Richardson,* 445 F.2d 36 (7th Cir.1971); *Kutchman v. Cohen,* 425 F.2d 20 (7th Cir.1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the Secretary's findings." *Garfield v. Schweiker,* 732 F.2d 605, 607 (7th Cir.1984) *citing Whitney v. Schweiker,* 695 F.2d 784, 786 (7th Cir.1982); 42 U.S.C. § 405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rhoderick v. Heckler,* 737 F.2d 714, 715 (7th Cir.1984) quoting *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *see Allen v. Weinberger,* 552 F.2d 781, 784 (7th Cir.1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. § 405(g), unless there has been an error of law." *Garfield, supra* at 607; *see also Schmoll v. Harris,* 636 F.2d 1146, 1150 (7th Cir.1980).

In the present matter, after consideration of the entire record, the ALJ made the following findings:

1. The claimant met the disability insured status requirement of the Act on August 29, 1980, the date the claimant stated she became unable to work, and continues to meet them through December 31, 1985, but not thereafter.

2. The claimant has not engaged in substantial gainful activity since August 29, 1980.

3. The medical evidence establishes that the claimant has severe fibromyalgia, but that she does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.

4. The claimant's testimony regarding her symptoms and limitation of function seemed somewhat exaggerated, was not well supported by the medical evidence as a whole and was less than fully credible.

5. The claimant has the residual functional capacity to perform work-related

activities except for work involving standing or walking for long periods of time, lifting and carrying weights exceeding 10 pounds and constant repetitive use of the hands. (20 CFR 404.-1545).

6. The claimant's past relevant work as a specification writer as that job is usually performed in the national economy did not require the performance of work-related activities precluded by the above limitation(s) (20 CFR 404.-1565).

7. The claimant's impairment does not prevent the claimant from performing her past relevant work.

8. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of the decision (20 CFR 404.1520(e)).

(Tr. 26–27). Based upon those findings, the ALJ determined that plaintiff was not entitled to a period of disability or disability insurance benefits. The Appeals Council denied plaintiff's request for review on April 1, 1987. This appeal followed.

Plaintiff filed her motion for summary judgment on September 17, 1987, alleging that the Secretary erred in denying benefits and raises three arguments in support of that contention. Defendant Secretary filed a cross-motion for summary judgment on that same date. Upon full review of the record in this cause, the court is of the view that substantial evidence supports the ALJ's conclusion and accordingly the decision of the Secretary denying benefits will be affirmed.

A five step test has been established to determine whether a claimant is disabled. The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe?" (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops inquiry and leads to a determination that the claimant is not disabled.

*Zalewski v. Heckler,* 760 F.2d 160, 162 n. 2 (7th Cir.1985); *accord Halvorsen v. Heckler,* 743 F.2d 1221 (7th Cir.1984). From the nature of the ALJ's decision to deny benefits, it is clear that step five was the determinative inquiry.

At the time of the supplemental administrative hearing [1] plaintiff was 54 years old and had a high school education. (Rec. 114). Her past relevant work experience included employment as a receptionist, secretary, and most recently as a specification writer. (Rec. 117–18, 139). As a specification writer, plaintiff was required to read blueprints and use a micrometer. (Rec. 118–19). That position required plaintiff to alternate between sitting and standing. Plaintiff was also required to lift eight pound research books in performing her employment as a specification writer.

Plaintiff left her employment as a specification writer due to pain in her hands and fingers which was diagnosed as being fibromyalgia. Plaintiff asserts that her entire body now hurts and any minimal exertion is exhausting. (Rec. 124). She also stated that she wears wrist and hand splints to minimize movement and pain. Plaintiff's medication consists of Meclomen, Xanax and extra strength Tylenol which does not completely relieve her pain. (Rec. 128, 138, 360).

The administrative record in this cause contains numerous medical reports, many of which were thoroughly overviewed with respect to plaintiff's previous application for disability insurance benefits. *See* foot-

---

1. Plaintiff filed a previous application for disability insurance benefits on March 12, 1981, alleging she became disabled on August 29, 1980. This application was denied at all four levels of administrative review. Plaintiff then appealed the Secretary's final decision to the United States District Court for the Northern District of Indiana, Fort Wayne Division. The district court affirmed the Secretary's decision on March 22, 1984.

note 1, *supra.* On September 18, 1981, plaintiff was admitted to St. Vincent Hospital in Indianapolis complaining of generalized constant pain over most of her body. (Rec. 363). A neurological examination was normal. Mild disc narrowing in the cervical and lumbar spine was disclosed through x-rays. Testing for rheumatoid arthritis was negative. A bone scan suggested early arthritic changes in plaintiff's hands. Nerve conduction studies were within normal limits and plaintiff's activities were not restricted. (Rec. 363–64). Similar results were obtained when plaintiff was examined at the Mayo Clinic from April 30, 1982 through May 4, 1982 by C.J. Wilkowski, an internist. During that hospitalization, psychological testing showed a pattern consistent with a conversion reaction. (Rec. 367). Plaintiff was diagnosed as having primary fibromyalgia and heat, massage and exercises were recommended. (Rec. 366–67).

On June 15, 1983, Dr. John Hague, plaintiff's treating rheumatologist, reported that plaintiff had primary fibromyalgia confirmed by the Mayo Clinic. Dr. Hague opined that plaintiff's condition was most severe and that prolonged use of any skeletal muscles would result in significant pain. His opinion was based upon his observation of muscle twitch signs. (Rec. 338). Dr. Hague advised a Disability Determination Service (DDS) examiner that it was his opinion that plaintiff's symptomology of fibromyalgia and fibromyositis equaled § 1.03 (rheumatoid arthritis) of the Listings of Impairments. (Rec. 339). Dr. Henry J. Marciniak reviewed the medical evidence as of January 4, 1984 and determined that plaintiff's fibromyalgia and fibromyositis did not meet or equal the Listings of Impairments. (Rec. 322–23).

In a response to a DDS questionnaire, Dr. Hague, based on an examination conducted May 17, 1984, indicated that plaintiff's fibromyalgia caused plaintiff to experience moderate to severe pain and tenderness in virtually all of her skeletal muscles. Dr. Hague also indicated that plaintiff had responded poorly to muscle relaxants and physical therapy and that plaintiff could not perform fine and gross manipulations on a prolonged basis. Plaintiff also had a mild loss of grip strength although she was able to heel and toe walk, climb stairs and get on and off the examination table without excessive difficulty. (Rec. 341–42).

At the request of the DDS, Dr. Scott Walker, an orthopedist, examined plaintiff on October 4, 1984. Plaintiff complained of diffuse body pain and swelling in her joints. Some degenerative arthritis in plaintiff's thumb joints were observed through x-rays and degenerative changes were also observed in plaintiff's cervical and lumbar spine. The range of motion in plaintiff's cervical spine and in her fingers was reported as within normal limits, although range of motion in plaintiff's lumbar spine and right hip was mild to moderately limited. Plaintiff's gait was normal. Dr. Walker concluded that plaintiff had primary fibromyalgia but that there were no definite neurological deficits. (Rec. 343–46).

Also at the request of the DDS, plaintiff was evaluated by Dr. Terry Parrish, a psychiatrist, on November 17, 1984. Plaintiff denied having any mental impairment. She complained of muscle pain and weakness. Dr. Parrish noted that plaintiff exhibited anger, some hostility and an undercurrent of depression. In his view, however, there were no specific psychiatric abnormalities. Dr. Parrish opined that plaintiff needed some ongoing psychiatric help. (Rec. 348–50).

Dr. Edward Bloemker, another DDS medical adviser, reviewed the medical evidence through November 17, 1984. Dr. Bloemker determined that plaintiff's diagnosis of soft tissue rheumatism and fibromyositis in combination with her psychological problems did not meet or equal the Listings of Impairments. Dr. Bloemker also concluded that plaintiff was capable of performing work requiring a light level of physical exertion as defined by the Dictionary of Occupational Titles. (Rec. 318–20).

In a letter to plaintiff's counsel dated June 4, 1985, Dr. Hague opined that plaintiff possibly met § 12.04 of the Listings of Impairments, functional non-psychotic disorders, and recommended a psychological

follow-up. Dr. Hague indicated that plaintiff could perform activities but would experience difficulty in prolonged activities such as working on an assembly line. (Rec. 368–69). A physical capacity assessment questionnaire submitted by Dr. Hague indicated that he estimated plaintiff could walk for one hour, sit for one hour, lift up to 10 pounds occasionally, reach, grasp, push, pull and perform fine manipulations an operate foot controls occasionally during an eight hour work day. (Rec. 372–74).

Other reports in the record from Dr. Hague dated August 30, 1985, November 17, 1985, and May 28, 1986, all reiterate his diagnosis with respect to plaintiff's fibromyalgia with accompanying soreness and pain. Similar conclusions were reached by Dr. Terry Fenwick, who examined plaintiff at the request of the DDS on August 17, 1985. Dr. Fenwick determined that plaintiff had a condition of fibromyositis and that she "obviously has a complex problem of myositis which is very difficult to treat, remedy or cure." (Rec. 378).

Plaintiff was also seen by Raymond Clausman, a clinical psychologist, on August 16, 1986, at the request of the DDS. Dr. Clausman reported some anxiety but there was no evidence of significant depression or of a severe psychological impairment. There was no evidence of strong hypochondriacal concerns but a mild preoccupation with physical status. (Rec. 395–96). Dr. Clausman observed that "[i]ntellectually, [the plaintiff] is still capable of functioning in a competitive, vocational setting." (Rec. 396). Dr. Clausman determined that the major factor relating to vocational functioning was plaintiff's complaints of physical problems. (*Id.*).

Also at the request of the DDS, plaintiff underwent a psychiatric evaluation by Prevesh K. Rustagi, on August 19, 1986. Plaintiff complained of generalized aches and pains. Dr. Rustagi reported that plaintiff had normal cognitive functioning with no abnormalities of mood or speech. Her daily activities were restricted by physical symptoms. Dr. Rustagi concluded that

while many of plaintiff's complaints may have some psychological components, she did not appear to be suffering from a primary psychiatric disorder. In his view, plaintiff had no significant mental limitations that would preclude her ability to work. (Rec. 399–404).

Apart from the medical evidence in the record, a vocational expert, Merrill C. Beyerl, testified at the supplemental hearing. The vocational expert testified that plaintiff's past work as a specification writer was sedentary and skilled. Although plaintiff would not be able to perform this past work as she actually had performed it due to the extensive writing it required, she was capable of working as a specification writer as it is generally performed in the national economy. The vocational expert also testified that plaintiff would be able to perform other jobs such as receptionist in a hospital, institution or library which did not require excessive use of her hands. (Rec. 147–50).

As indicated previously, plaintiff raises three arguments in which she contends that the ALJ erred in denying benefits. Because the second and third issues are interrelated they will be considered together after a review of the first issue raised by plaintiff.

The plaintiff first argues that the ALJ improperly concluded that plaintiff does not have an impairment which meets or equals the Listings of Impairments in 20 CFR Part 404, Subpart P, Appendix 1. In this vein, plaintiff asserts that she should be found to meet or equal a combination of listings 1.02 and 12.04 because those listings are most closely related to her impairments. Listing 1.02 categorizes active rheumatoid arthritis as a disabling impairment while listing 12.04 deals with affective disorders that are characterized by mood disturbances.

As indicated previously, Dr. Hague in a letter dated January 4, 1984, opined that while plaintiff's condition of fibromyalgia and fibromyositis did not meet any of the Listings of Impairments, the condition was

equal to listing 1.02,[2] the rheumatoid arthritis listing. (Rec. 339). In a June, 1985 letter to plaintiff's counsel, Dr. Hague also opined that plaintiff possibly met the functional non-psychotic disorders listing of 12.-04B and suggested the possibility of a psychological or psychiatric examination. (Rec. 369).

■ Initially, it should be "note[d] that an ALJ is not bound by a doctor's conclusion that a claimant is 'disabled because he meets the requirement of a certain listing.'" *Waite v. Bowen,* 819 F.2d 1356, 1359 (7th Cir.1987). Moreover, there is substantial evidence in the record to support the conclusion that plaintiff did not meet or equal any of the listings in the Listings of Impairments.

Section 1.02 of the listings provides:

1.02 *Active rheumatoid arthritis and other inflammatory arthritis.*

With both A and B.

A. History of persistent joint pain, swelling, and tenderness involving multiple major joints (see 1.00D) and with signs of joint inflammation (swelling and tenderness) on current physical examination despite prescribed therapy for at least 3 months, resulting in significant restriction of function of the affected joints, and clinical activity expected to last at least 12 months; and

B. Corroboration of diagnosis at some point in time by either.

1. Positive serologic test for rheumatoid factor; or

2. Antinuclear antibodies; or

3. Elevated sedimentation rate; or

4. Characteristic histolic changes in biopsy of synovial membrane or subcutaneous nodule (obtained independent of Social Security disability evaluation).

20 CFR Part 404, Subpart P, Appendix 1, § 1.02. Dr. Hague's opinion that plaintiff's fibromyositis was equal to the foregoing listing is not supported by the objective medical evidence in the record. While Dr.

Hague made this diagnosis apparently based on plaintiff's subjective complaints of pain and his observations of a muscle twitch, there is no objective evidence in the record of a persistent history of joint inflammation involving multiple major joints that is corroborated as required by 1.02B. Further, both Dr. Marciniak and Dr. Bloemker, DDS medical advisers, considered the objective medical evidence in the record and determined that plaintiff's diagnosis of soft tissue rheumatism with symptoms of fibromyalgia and fibromyositis did not meet or equal any impairment in the Listings of Impairments.

Nor does plaintiff meet or equal the listing in § 12.04B. The psychological evaluations in the record are consistent in showing that while plaintiff did exhibit some depression and hostility, she does not have a primary psychological disorder. The evidence in the record shows that plaintiff has good contact with reality, good social access, and no psychological problems that would interfere with a work-related setting or work-related activity. Therefore, plaintiff has not demonstrated that she meets or equals all of the requirements of 12.04B. Moreover, at the supplemental hearing, plaintiff's counsel stated that "she doesn't have [a] mental impairment. She doesn't have a psychological impairment." (Rec. 152).

A review of the Administrative Law Judge's decision indicates that he thoroughly considered the issue of medical equivalents with respect to plaintiff's claims that she meets or equals the listings. The ALJ wrote that "[t]he medical evidence establishes that the claimant has severe fibromyalgia but that she does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4." (Rec. 26). "This is sufficient articulation to demonstrate that the ALJ considered the

---

**2.** In his letter, Dr. Hague referred to listing 1.03 as being the rheumatoid arthritis listing. Obviously that was a scrivener's error because listing 1.03 deals with arthritis of a major weight-bearing joint. Even if Dr. Hague was referring to listing 1.03, there is no objective medical evidence of any gross anatomical deformity in plaintiff's hip or knee as required by 1.03 of the listing.

issue of medical equivalents." *Waite, supra,* at 1359.

As an offshoot of the foregoing, plaintiff argues that "[t]his court has a legal responsibility to give Dr. Hague's opinion the substantial weight that a long term, treating physician deserves." (Plaintiff's Memorandum, p. 4). With respect to the amount of weight given different physicians' reports, the United States Court of Appeals for the Seventh Circuit wrote:

> The patient's regular physician may want to do a favor for a friend and client, and so the treating physician may too quickly find disability. *Cummins v. Schweiker,* supra, 670 F.2d [81] at 84 [7th Cir. (1982)]. The regular physician also may lack an appreciation of how one case compares with other related cases. A consulting physician may bring both impartiality and expertise. A lawyer with a general practice often brings in a specialist for a few hours' consultation and pays handsomely; the specialist's review of an antitrust problem may reveal more than two weeks of work by a lawyer who handles few antitrust cases. Similarly, a physician who specializes in diseases of the thorax may contribute more knowledge to the administrative process after a one-hour examination than the general practitioner (who sees few thorax problems) contributes after years on the case. Many patients pay premium prices to have an hour's time with a physician with expertise in the precise problem they face, greatly preferring an hour of top-quality care to a week of average care. The consulting specialist can tell how a patient fits in a spectrum of similar ailments, something the non-specialist may not be able to do. The Secretary's delegate is free to make the same sort of choice an informed patient may make for himself. Experience and knowledge of this case lie on the side of the treating physician, expertise and knowledge of similar cases on the side of the consulting specialist. How these weigh in a particular case is a question for the Secretary's delegate, subject only to the rule that the final decision must be supported by "substan-

tial evidence." See *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *Strunk v. Heckler,* 732 F.2d 1357, 1362–64 (7th Cir. 1984).

*Stephens v. Heckler,* 766 F.2d 284, 289 (7th Cir.1985).

In the present matter, the ALJ made an informed choice with respect to the various physicians' reports. In his decision, the ALJ wrote "[a]lthough Dr. Hague has seen the claimant a number of times over a long period the claimant has also been examined by several other doctors and none of these other doctors appear to share Dr. Hague's opinion with regard to the severity of the claimant's condition." (Rec. 25).

■ Plaintiff also argues that the ALJ erred when he found plaintiff capable of performing her past relevant work as a specification writer and further erred when he found plaintiff capable of engaging in any substantial gainful activity. Again, substantial evidence supports the ALJ's conclusion.

The ALJ found that plaintiff retained the residual functional capacity to perform sedentary work and could therefore return to her past work as a specification writer as it is generally performed in the national economy. Under the regulations, "[t]he claimant first must bear the burden at step one of showing that he is not working, at step two that he has a medically severe impairment or combination of impairments, and at step four that the impairment prevents him from performing his past work." *Bowen v. Yuckert,* —— U.S. ——, 107 S.Ct. 2287, 2294 n. 5, 96 L.Ed.2d 119 (1987).

In the present matter, plaintiff has wholly failed to carry her burden of establishing that she is unable to perform her past relevant work as a specification writer. The objective medical evidence in the record indicates the presence of arthritic changes which cause plaintiff some degree of pain and discomfort, particularly in her hands and limit her in the ability to use her hands. The objective medical evidence, however, does not support her claim that she is precluded from work as a specifica-

tion writer as it is performed in the national economy.

Even assuming that plaintiff would not be able to perform her past work as a specification writer as she actually had performed it due to the extensive writing it required, the ALJ properly determined that plaintiff could perform her past work as a specification writer as it is generally performed in the national economy.

In determining that the plaintiff has the residual functional capacity to perform her past work, it is incumbent upon the ALJ to compare the demands of plaintiff's past work with her existing capabilities when the past work was "sedentary." *Strittmatter v. Schweiker,* 729 F.2d 507, 509 (7th cir. 1984). Here, the ALJ made such a comparison and determined that plaintiff retained the residual functional capacity for sedentary work that did not require constant or repetitive use of her hands. The ALJ's conclusion on this score was supported by the vocational expert's testimony to the effect that while plaintiff would not be able to perform her particular past sedentary skilled work as a specification writer, she would be able to perform the job of specification writer as it is generally performed in the national economy because that employment does not generally require the excessive use of an individual's hands. Moreover, the vocational expert testified that plaintiff could also perform her past sedentary work as a receptionist so long as that work was limited to activities such as answering the telephone and greeting people in environments such as hospitals, institutions and libraries.

Taken in balance, this court is of the view that the decision of the ALJ is supported by substantial evidence. Accordingly, the decision of the Secretary denying benefits will be affirmed.

## Conclusion

On the basis of the foregoing, plaintiff Joan P. Johnson's September 17, 1987 motion for summary judgment is DENIED. Defendant Secretary of Health and Human Services' September 17, 1987 motion for summary judgment is GRANTED.