Fred L. NIX, Plaintiff,

v.

Louis W. SULLIVAN, M.D., Secretary
of Health & Human Services,
Defendant.

Civ. No. F 89–232.

United States District Court,
N.D. Indiana,
Fort Wayne Division.

July 12, 1990.

Joseph W. Shull, Fort Wayne, Ind., for
plaintiff.

Tina L. Nommay, Asst. U.S. Atty., Fort
Wayne, Ind., for defendant.

ORDER

WILLIAM C. LEE, District Judge.

This is an action for judicial review of a
final decision of the defendant Secretary of

Health and Human Services denying plaintiff's application for the establishment of a period of disability under Section 216(i) of the Social Security Act and for disability insurance benefits as provided by Section 223 of the Act. 42 U.S.C. § 416(i); 42 U.S.C. § 423. Section 205(g) of the Act provides, *inter alia*, "[a]s part of his answer, the Secretary shall file a certified copy of the transcript of the record including the evidence upon which the findings and decision complained of are based. The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Secretary, with or without remanding the case for a rehearing." It also provides, "[t]he findings of the Secretary as to any fact, if supported by substantial evidence, shall be conclusive...." 42 U.S.C. § 405(g).

The law provides that an applicant for disability insurance benefits must establish an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to last for a continuous period of not less than 12 months...." 42 U.S.C. § 416(i)(1); 42 U.S.C. § 423(d)(1)(A). A physical or mental impairment is "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3). It is not enough for plaintiff to establish that an impairment exists. It must be shown that the impairment is severe enough to preclude plaintiff from engaging in substantial gainful activity. *Gotshaw v. Ribicoff*, 307 F.2d 840 (4th Cir. 1962), *cert. denied*, 372 U.S. 945, 83 S.Ct. 938, 9 L.Ed.2d 970 (1963); *Garcia v. Califano*, 463 F.Supp. 1098 (N.D.Ill.1979). It is well established that the burden of proving entitlement to disability insurance benefits is on the plaintiff. *See Jeralds v. Richardson*, 445 F.2d 36 (7th Cir.1971); *Kutchman v. Cohen*, 425 F.2d 20 (7th Cir.1970).

Given the foregoing framework, "[t]he question before [this court] is whether the record as a whole contains substantial evidence to support the Secretary's findings."

*Garfield v. Schweiker*, 732 F.2d 605, 607 (7th Cir.1984) *citing Whitney v. Schweiker*, 695 F.2d 784, 786 (7th Cir.1982); 42 U.S.C. § 405(g). "Substantial evidence is defined as 'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.' " *Rhoderick v. Heckler*, 737 F.2d 714, 715 (7th Cir.1984) quoting *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1971); *see Allen v. Weinberger*, 552 F.2d 781, 784 (7th Cir.1977). "If the record contains such support [it] must [be] affirmed, 42 U.S.C. § 405(g), unless there has been an error of law." *Garfield, supra* at 607; *see also Schmoll v. Harris*, 636 F.2d 1146, 1150 (7th Cir.1980).

In the present matter, after consideration of the entire record, the Appeals Council made the following findings:

1. The claimant met the disability insured status requirements of the Act on August 28, 1987, the date he stated he became unable to work, and continues to meet them through the date of this decision.

2. The claimant has not engaged in substantial gainful activity since August 28, 1987.

3. The medical evidence establishes that the claimant has severe ankylosing spondylitis, psoriasis and retral bulbar neuritis of the right eye with diminished vision, but that he does not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4.

4. The claimant's testimony as to his limitations was found to be somewhat exaggerated and was not substantiated by the medical evidence.

5. The claimant has the residual functional capacity to perform the physical exertion and nonexertional requirements of work except for work requiring prolonged standing or lifting more than 10 pounds. He also cannot bend constantly, climb, work

around chemicals or irritants, or do work which requires fine visual acuity. He must also alternate between sitting and standing, and his concentration is affected in a mild to moderate way (20 CFR 404.1545).

6. The claimant is unable to perform his past relevant work as an inspector, a shop helper, a service station attendant, a machine operator or a coil winder.

7. The claimant's residual functional capacity for the full range of sedentary work is reduced by the above listed nonexertional limitations.

8. The claimant is 37 years old, which is defined as a younger person (20 CFR 404.1563).

9. The claimant has completed high school (20 CFR 404.1564).

10. The claimant does not have any acquired work skills which are transferable to the skilled or semi-skilled work activities of other work (20 CFR 404.1568).

11. Based on an exertional capacity for sedentary work, and the claimant's age, education, and work experience, Section 404.1569 and Rule 201.28, Table No. 1, Appendix 2, Subpart P, Regulations No. 4 would direct a conclusion of "not disabled."

12. Although the claimant's additional nonexertional limitations do not allow him to perform the full range of sedentary work, using the above-cited rule as a framework for decision-making, there are a significant number of jobs in the national economy which he could perform. Examples of such jobs are: ticket seller, dispatcher, order clerk and telephone solicitor.

13. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR 404.-1520(f)).

Based upon those findings, the ALJ made a recommended decision that plaintiff was not entitled to a period of disability or disability insurance benefits. The ALJ's decision became the final decision of the Secretary on August 11, 1989, when the Appeals Council denied plaintiff's request for review. This appeal followed.

Plaintiff filed a complaint in this court to review the decision of the Secretary on October 12, 1989 and filed a brief in support of complaint on March 14, 1990. On May 7, 1990, the Secretary filed a motion for summary judgment. Upon full review of the record in this cause, this court is of the view that substantial evidence supports the Secretary's conclusion and accordingly, the decision of the ALJ will be affirmed.

A five step test has been established to determine whether a claimant is disabled. *See Singleton v. Bowen*, 841 F.2d 710, 711 (7th Cir.1988); *Bowen v. Yuckert*, 482 U.S. 137, 107 S.Ct. 2287, 2290–91, 96 L.Ed.2d 119 (1987). The United States Court of Appeals for the Seventh Circuit has summarized that test as follows:

> The following steps are addressed in order: (1) Is the claimant presently unemployed? (2) Is the claimant's impairment "severe"? (3) Does the impairment meet or exceed one of a list of specific impairments? (4) Is the claimant unable to perform his or her former occupation? (5) Is the claimant unable to perform any other work within the economy? An affirmative answer leads either to the next step or, on steps 3 and 5, to a finding that the claimant is disabled. A negative answer at any point, other than step 3, stops inquiry and leads to a determination that the claimant is not disabled.

*Nelson v. Bowen*, 855 F.2d 503, 504 n. 2 (7th Cir.1988); *Zalewski v. Heckler*, 760 F.2d 160, 162 n. 2 (7th Cir.1985); *accord Halvorsen v. Heckler*, 743 F.2d 1221 (7th Cir.1984). From the nature of the ALJ's decision to deny benefits, it is clear that step five was the determinative inquiry.

Plaintiff filed his application for DIB on February 22, 1988. This application was denied at both the initial and reconsideration stages of administrative review. Plaintiff requested a hearing and one was held before Administrative Law Judge

(ALJ) Edward Bayouth–Babilonia. In a decision dated January 31, 1989, the ALJ found that plaintiff had severe ankylosing spondylitis, psoriasis and retral bulbar neuritis of the right eye with diminished vision, but that these impairments did not meet or equal any impairment in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the Listings). The ALJ further determined that although plaintiff could not perform any of his past jobs, he retained the residual functional capacity (RFC) to perform the physical exertional and nonexertional requirements of work, and was therefore not disabled. Plaintiff petitioned the Appeals Council for review of the ALJ's decision and the Appeals Council denied review, making the ALJ's decision of January 31, 1989 the final decision of the Secretary.

At the time of the administrative hearing, plaintiff was 37 years old and had a twelfth grade education with no other formal training. His past relevant work experience included employment as an inspector, shop helper, service station attendant, machine operator, and coil winder.

The medical evidence includes the reports of several examining and reviewing physicians. On March 31, 1981, Dr. Zauel, an ophthalmologist, diagnosed plaintiff as having optic atrophy. The neuro-ophthalmology exam indicated that plaintiff had 20/20 vision in his left eye and 20/200 vision in his right eye.

Dr. George Hamilton was plaintiff's treating physician from April 16, 1979 to August 2, 1988. The office notes of Dr. George Hamilton from April 16, 1979 indicate that plaintiff's psoriasis problem started in 1978. X-rays were taken of plaintiff's chest, dorsal spine, and sacroiliac [1] joints on April 26, 1979. The x-rays of the chest were within normal limits. X-rays of the dorsal spine showed no definite abnormality. The x-rays of the sacroiliac joints showed a transitional lumbosacral ver-

tebrae with a false joint on the right. There was no evidence of fusion, but there were definite changes along both joints, which appeared to be consistent with ankylosing spondylitis.[2] On January 12, 1982, Dr. George Hamilton reported that plaintiff experienced pain in his left hip and was walking stiffly. On September 11, 1987, Dr. George Hamilton noted a flare of arthritis and reported that plaintiff complained his left hip really hurt and he had never experienced this before. From September 1987 through May 1988, Dr. George Hamilton's clinical notes show that plaintiff was periodically experiencing muscle spasms, muscle cramps, stiffness of the jaw, and stiffness of the neck. On March 29, 1988 Dr. George Hamilton reported that he had examined plaintiff on March 17, 1988 and diagnosed plaintiff as having rheumatoid spondylitis and psoriasis. He found plaintiff's back stiff, but no range of motion studies, myelogram or EMG tests had been performed.

Plaintiff was admitted to the hospital on July 9, 1987. An examination by Dr. M. Kaplan found plaintiff's condition unremarkable except for extensive psoriasis which was unresponsive to the usual therapy. Plaintiff also underwent a liver biopsy, which was normal.

An x-ray report by Dr. Zimmer on September 15, 1987 found that the sacroiliac joints were in the process of fusing due to ankylosing spondylitis. The arthritis involved several muscle origin sites on the bony pelvis, most markedly the ischial tuberosities [3]. The symphysis pubis (pubic bone) and both hips (left greater than right) were also involved with the arthritis of ankylosing spondylitis. The left hip joint space had narrowed from 4 mm. on the previous study (4–26–79) to 2½ mm., but there was only minimal narrowing of the

---

1. The sacroiliac joint is the joint formed by the sacrum (lower portion of the spine below the lumbar spine) and the ilium (expansive superior portion of the hip bone). *Dorland's Illustrated Medical Dictionary* 817, 1479 (W.B. Saunders Co. 25th ed. 1988).

2. Ankylosing is the fusing of two or more bones. Spondylitis is the inflammation of the vertebrae of the spine. *Dorland's* at 91, 1566.

3. Nodules or protuberances on the hips. *Dorland's* at 857, 1712.

right hip joint. Solid bony trabeculae [4] spanned the sacroiliac joints bilaterally.

Plaintiff was examined by Dr. Gilbert on February 19, 1988. Dr. Gilbert reported that plaintiff's extremities, trunk, scalp, and hands were affected by psoriasis and that the appearance and extent of lesions was severe. Dr. Gilbert found that plaintiff could grasp, but noted that mechanical work with tools could make his psoriasis worse. No other functional restrictions were imposed by his skin condition.

On May 3, 1988, Dr. Ungemach performed a consultative examination on plaintiff. Plaintiff reported to Dr. Ungemach a history of problems with the lumbar spine, neck, fingers, toes, and jaw. Plaintiff also reported occasional swelling and pain off and on in one joint or another. Plaintiff's joint movement was limited when it was painful, but otherwise he could move the joints with no pain. Dr. Ungemach's examination revealed that plaintiff had psoriasis over his entire body and that plaintiff was nearly blind in his right eye from retral bulbar neuritis. Dr. Ungemach noted plaintiff's history of ankylosing spondylitis, but found that plaintiff could walk, sit-up, recline, turn over, and get on and off the examining table without assistance. Plaintiff's gait and station were normal, and he was able to walk on his heels and toes and tandem walk as well. Range of motion tests done by Dr. Ungemach revealed that plaintiff's knee flexion and hyperextension were near normal. Plaintiff's hip flexion was more than 80% of normal, and hip extension with foot planted on the floor was two-thirds of the maximum but was less when lying flat. Plaintiff's hip abduction was limited to a greater degree. Plaintiff's neck and back flexion was also limited. Plaintiff's neck was extremely stiff with almost no motion and plaintiff had very limited spine movement. Plaintiff's forward trunk flexion when standing was only 30 degrees but he could do straight leg raising to 45 degrees, which was thought to be slightly inconsistent. All of plaintiff's joints were slightly tender, but not too red, hot or swollen. Plaintiff's hand grip was 195mm. on the right and 200mm. on the left. Plaintiff's unassisted gait was normal. Dr. Ungemach's overall impression was that the plaintiff had psoriasis, joint pain by history with a past history of rheumatoid arthritis, ankylosing spondylitis, and retral bulbar neuritis of the right eye with diminished vision.

On May 16, 1988, Dr. Berker reviewed the plaintiff's medical records. Although Dr. Berker found that plaintiff had ankylosing spondylitis, psoriasis and retral bulbar neuritis, he determined that these impairments did not preclude the plaintiff from doing light work. Dr. Berker determined that plaintiff had the residual functional capacity (RFC) to lift 20 pounds occasionally, 10 pounds frequently, stand or walk six hours of an eight hour work day, and sit for at least six hours. Dr. Berker further found that plaintiff had an unlimited ability to reach, handle, finger, feel, see, hear and speak and could occasionally climb, balance, stoop, kneel, crouch, and crawl. On June 15, 1988, Dr. Tucker also reviewed plaintiff's medical records and made identical findings.

After Dr. George Hamilton died, Dr. Thomas Hamilton began seeing plaintiff. In a report dated November 7, 1988, Dr. Thomas Hamilton stated that he had been seeing the plaintiff for only the prior two months. Dr. Thomas Hamilton noted that plaintiff's previous doctor, Dr. George Hamilton, had diagnosed the claimant as having ankylosing spondylitis. Based on the progression of the plaintiff's spondylitis, Dr. Thomas Hamilton felt that the plaintiff would be completely unable to maintain any gainful employment in the not too distant future. Dr. Thomas Hamilton added that the plaintiff had a lack of motivation. On an accompanying Medical Assessment Form, Dr. Thomas Hamilton indicated that the plaintiff could only lift 10 pounds, stand/walk a total of one to two hours in an eight hour work day, sit for one to two hours at a time, could never crouch

4. Trabeculae are bony spicules which form a meshwork of intercommunicating spaces that are filled with bone marrow. *Dorland's* at 1737.

or crawl, and could only occasionally climb, balance, stoop, and kneel. Dr. Thomas Hamilton further indicated that the plaintiff's reaching, handling, and pushing/pulling was affected and added that the plaintiff could not work around moving machinery because the plaintiff moved slowly.

On March 22, 1989, several months after the ALJ's decision denying benefits, Dr. James Silliman reported that he had examined plaintiff on March 21, 1989. Dr. Silliman's examination revealed psoriasis covering plaintiff's body. Plaintiff's hip flexion and extension plane moved from a 30 degree hip flexion contracture to approximately 70 to 80 degrees of hip flexion. There was no significant loss of range of motion in plaintiff's knees, ankles, or feet. Dr. Silliman stated that he did not feel plaintiff would be employable in the future for any type of manual labor employment. Plaintiff's attorney prepared and submitted a questionnaire to Dr. Silliman along with excerpts of the Social Security Act and regulations. By checking off various answers, Dr. Silliman reported on this form that plaintiff had arthritis manifested by ankylosis with x-ray evidence of bilateral ankylosis of the sacroiliac joints. Dr. Silliman also reported that plaintiff had experienced pain, muscle spasm and significant limitation of motion in the spine. However, Dr. Silliman's opinion was that plaintiff did not have spinal stenosis or significant motor loss, muscle weakness, or sensory or reflex loss. Dr. Silliman also noted that plaintiff had joint pain, swelling, unspecified deformities, tenderness and limitation of motion (without specifying how much) in his feet, ankles, knees, hips, shoulders, elbows, and spine. No mention was made of any limitations on walking or standing.

At plaintiff's January 12, 1989 administrative hearing, plaintiff testified that it was basically his spondylitic condition which prevented him from working. He indicated that he had been battling with the spondylitic condition beginning about 1979 and had also had problems with psoriasis since 1977. Plaintiff also mentioned that he does not have any vision in his right eye. Plaintiff stated he had been working for years with his condition because he was very persevering, but since his condition had worsened over the years he could no longer go on with his work. Plaintiff testified that he could sit for 45 minutes in a straight-back soft chair, but that he could not sit for a total of six hours out of an eight-hour workday. Plaintiff stated that he had stiffness which made walking, bending, and gripping difficult. Plaintiff further testified that he performs household chores such as running a sweeper and taking out the garbage and that he also engages in activities such as shooting pool, but these activities are limited to plaintiff's "good days".

Mr. Robert Bond, a vocational expert, also testified at the administrative hearing. The vocational expert testified that plaintiff could not perform any of his past relevant work with his present limitations, but could perform work as a ticket seller, dispatcher, order clerk, and telephone solicitor. The vocational expert also testified that all of these jobs could still be performed by plaintiff even if plaintiff had to alternate between sitting and standing, could not sit for any longer than 45 minutes in an hour, and could not stand any longer than 30 minutes. After considering all the evidence in the record and assessing the credibility of the witnesses, the ALJ determined that plaintiff was not disabled because he could perform a significant number of jobs in the national economy.

■ Plaintiff contends that plaintiff meets or equals two listed impairments: 1.03 A for arthritis of a major weight-bearing joint and 1.05 A for a disorder of the spine. Listing 1.03 A reads as follows:

1.03 *Arthritis of a major weight-bearing joint (due to any cause).*

With history of persistent joint pain and stiffness with signs of marked limitation of motion or abnormal motion of the affected joint on current physical examination. With:

A. Gross anatomical deformity of hip or knee (e.g. subluxation, contracture, bony or fibrous ankylosis, instability) supported by x-ray evidence of either significant joint space narrowing or significant

bony destruction and markedly limiting ability to walk and stand.

To meet or equal listing 1.03 A, plaintiff must establish several elements by medical evidence. First, listing 1.03 A requires a history of persistent joint pain and stiffness in the affected joint. The Secretary points out that plaintiff reported to Dr. Ungemach at his May, 1988 examination that plaintiff only had occasional swelling and pain. Thus, the Secretary concludes that plaintiff's joint pain and stiffness was not persistent as required by the listing. The Secretary further points out that the plaintiff did not meet the requirement in listing 1.03 A that plaintiff experience a marked limitation in the ability to walk and stand. In his examination, Dr. Ungemach found that plaintiff could walk with a normal gait, walk on his heels and toes, and tandem walk. Furthermore, both Dr. Berker and Dr. Tucker found that plaintiff could walk and/or stand for six hours of an eight hour work day. Although plaintiff argues that the Secretary has ignored medical evidence that plaintiff has persistent pain and swelling as well as marked limitation of motion, the court finds that the Secretary's finding that plaintiff does not have these symptoms and limitations to be supported by the medical opinions of one examining physician and two reviewing physicians. It is well settled in the Seventh Circuit that the opinion of a reviewing physician who did not directly examine plaintiff can constitute substantial evidence to support the Secretary's decision. *Garrison v. Heckler*, 765 F.2d 710, 713 (7th Cir. 1985).

■ As noted earlier, plaintiff also argues that he meets or equals listing 1.05 A. Listing 1.05 A provides as follows:

*1.05 Disorders of the spine.*

A. Arthritis manifested by ankylosis or fixation of the cervical or dorsolumbar spine at 30 degrees or more of flexion measured from the neutral position with x-ray evidence of:

1. Calcification of the anterior and lateral ligaments; or

2. Bilateral ankylosis of the sacroiliac joints with abnormal apophyseal articulations.

Plaintiff contends that three doctors reported ankylosis of plaintiff's cervical and dorsolumbar spine. However, as the Secretary points out, none of the reports plaintiff cites report ankylosis of the cervical or dorsolumbar spine. Dr. George Hamilton reported ankylosing of the sacroiliac, not the cervical (neck) or dorsolumbar (lower back) spine. The sacroiliac joint is the joint formed by the sacrum (lower portion of the spine below the lumbar spine) and the ilium (expansive superior portion of the hip bone).[5] Dr. Thomas Hamilton does not refer to the cervical or dorsolumbar spine in his report. Although Dr. Ungemach noted that plaintiff stated that he had ankylosing spondylitis diagnosed 10 years before in his lumbar spine, Dr. Ungemach did not make such a finding. In fact, contrary to plaintiff's statement to Dr. Ungemach, the x-ray report from 10 years ago specifically states that "views of the dorsal spine shows no definite abnormality at this time." The 1979 x-ray notes only early ankylosing spondylitis in the sacroiliac joint. On a questionnaire form prepared by plaintiff's attorney, Dr. Silliman checked the "yes" box after the question "Does Mr. Nix have arthritis manifested by ankylosis or fixation of a cervical or dorsolumbar spine at 30° or more of flexion measured from the neutral position?" However, in Dr. Silliman's written report he stated that x-rays of the lumbar spine showed no anterior ankylosis. The Secretary rejected Dr. Silliman's questionnaire answer because it contradicted his written report and also because Dr. Silliman's examination and report was after the ALJ's decision, and therefore, was not relevant. Furthermore, the Secretary observed that none of the doctor's reports during the period in question report any fixation of plaintiff's cervical or dorsolumbar spine, and notes that a fixation of the spine at 30 degrees or more from the normal position is not a condition which an examining or treating doctor is likely to miss. A review of the evidence

---

5. *Dorland's* at 817, 1479.

shows that there is substantial evidence to support the Secretary's conclusion that plaintiff was not suffering from ankylosis or fixation of a cervical or dorsolumbar spine at 30° or more of flexion.[6]

■ The ALJ found that "the claimant's testimony as to his limitations was found to be somewhat exaggerated and was not substantiated by medical evidence." Plaintiff contends that the ALJ did not adequately articulate this credibility finding. On this point the court notes that the ALJ's credibility finding must be upheld unless patently erroneous. *Imani v. Heckler*, 797 F.2d 508, 512 (7th Cir.1986). A review of the medical evidence indicates that the ALJ's credibility finding cannot be described as patently erroneous. Plaintiff's claim that he had to stand and move about after sitting for 45 minutes is contradicted by several doctor's reports. Dr. Thomas Hamilton reported two months before the ALJ's decision that the plaintiff could sit uninterrupted for one to two hours at a time. Dr. Hamilton even questioned the plaintiff's motivation to work. Drs. Tucker and Berker both reported that the plaintiff could sit at least 6 hours of an eight hour day and made no mention of the need to alternate sitting with standing. Thus, the court finds that the ALJ's finding that plaintiff's limitations were exaggerated is supported by the record.

■ Plaintiff asserts that the Secretary erroneously concluded that plaintiff had the RFC to perform a significant number of jobs in the national economy. The ALJ found that plaintiff had the RFC to perform work which did not require lifting more than 10 pounds, prolonged standing, constant bending, climbing, working around chemicals or irritants, intense concentration, or fine visual acuity, and which would not preclude plaintiff from alternating between sitting and standing. The plaintiff's own testimony supports this RFC. Plaintiff testified that he could lift 10 pounds and work at a job where he could alternate between sitting (for 45 minutes) and standing. He stated his doctor had only told him to avoid excessive standing, bending, or lifting, and he reported he had trouble bending over to pick something off the floor. Plaintiff further testified that he could walk for four blocks or for 35 minutes. Neither his psoriasis nor his eyesight, he testified, precluded him from working. Plaintiff also testified that despite his impairments he was able to drive a car, read, watch television, play golf, shoot pool, bathe, shop, run a sweeper, carry out the garbage, climb stairs and push a broom.

The medical evidence also supports the ALJ's RFC finding. Dr. George Hamilton, plaintiff's treating doctor, did not express an opinion that plaintiff could not do sedentary work. Dr. Ungemach reported that plaintiff had only occasional swelling and pain and his joint movements were limited only when painful. On examination, Dr. Ungemach did not find plaintiff's joints red, hot, or swollen, but only slightly tender. Dr. Ungemach found that plaintiff could walk with a normal gait, tandem walk, heel and toe walk, situp, recline, and turn over without assistance. Dr. Thomas Hamilton, plaintiff's second treating doctor, on November 7, 1989 did not find plaintiff to be currently disabled. Dr. Thomas Hamilton reported that currently plaintiff could lift 10 pounds, stand or walk up to two hours of an eight hour work day, sit uninterrupted for up to two hours at a time, occasionally climb, balance, stoop and kneel, but never crouch or crawl. Drs. Tucker and Berker who reviewed plaintiff's medical records both found that plaintiff could stand or walk for 6 hours of an 8 hour work day, sit for at least 6 hours, and lift up to 20 pounds. These findings are consistent with the ALJ's RFC finding.

At the hearing, the ALJ asked the vocational expert, Mr. Bond, in a hypothetical

---

**6.** Plaintiff also suggests that even if his impairments do not meet listings 1.03 A and/or 1.05 A, the combination of all his impairments may equal a listing. The ALJ specifically ruled out this possibility. Plaintiff does not point to any specific listing, nor does he suggest how the additional limitations he cites would be a substitute for the missing elements of such a listing. Therefore, it is clear that plaintiff has not presented any basis for finding he equals a listing.

question, what jobs the plaintiff, with his age, education, and work experience, could perform if he was limited to sedentary work and was precluded from doing any work which required fine or detailed visual acuity, exposure to chemical irritants, climbing, or repetitive bending. Mr. Bond testified that these limitations would not preclude plaintiff from performing jobs including those of ticket seller, dispatcher, order clerk, and telephone solicitor. All these jobs could be performed in a straight-back soft chair which the plaintiff specified was necessary for him to sit for any period of time. Mr. Bond further testified that plaintiff could do all these jobs even if he could not sit for more than 45 minutes at a time and had to alternate between sitting and standing.

Plaintiff further argues that he should be found disabled under the Grid because he cannot do a full range of sedentary work. Plaintiff contends that the ALJ committed reversible error when the ALJ applied the plaintiff's additional non-exertional limitations to the full range of sedentary work without consideration of Section 201.00(h) of the Grid regulations. 20 CFR Part 404, Subpart P, Appendix 2, § 201.00(h). The proper application of the Grid regulations was overviewed by the United States Court of Appeals for the Seventh Circuit in *Smith v. Schweiker*, 735 F.2d 267 (7th Cir.1984).

Since 1978 the Secretary has sought to meet this burden by relying on part on its Medical Vocational Guidelines. *See* 20 C.F.R. pt. 404, subpt. P, app. 2 (1983). The Appendix 2 Guidelines indicate in grid form whether a significant number of jobs exist in the national economy for individuals with various impairments of physical capacity, ages, education, and work experience. *See Heckler v. Campbell*, 461 U.S. 458, 103 S.Ct.1952, 1954–55, 76 L.Ed.2d 66 (1983). Where an individual's characteristics correspond to factors on the grid, the Guidelines direct a finding of disabled or not disabled.

The Guideline rules do not encompass the characteristics of every conceivable claimant but rather describe what the agency has determined to be major voca-

tional and functional patterns. *See* 20 C.F.R. § 404.1569 (1983). The Guidelines only apply when the claimant's vocational factors and residual functional capacity correspond with the criteria of a specific rule. *Id.;* Appendix 2, § 200.00(d). *See Campbell*, 461 U.S. 458 at 462 n. 5, 103 S.Ct. at 1955 n. 5 ("the rules will be applied only when they describe a claimant's abilities and limitations accurately"). *See also Kail v. Heckler*, 722 F.2d 1496, 1498 (9th Cir.1984); *Cannon [v. Harris ]*, 651 F.2d [513] at 517 [7th Cir. 1981].

*Smith, supra,* at 270. The example to which plaintiff refers to in section 201.00(h) involves a person who does not have bilateral manual dexterity. This limitation is not present in the case at bar, so this section is not relevant.

Plaintiff finally argues that the ALJ, by limiting plaintiff to jobs which allow him to alternate between sitting and standing, reduced his job base to an insignificant number of jobs. The vocational expert, however, testified that the sit/stand limitation, in addition to plaintiff's other limitations, still allowed him to perform the jobs of ticket seller, dispatcher, order clerk and telephone solicitor. The vocational expert further testified that in the regional area alone there were 150 ticket seller jobs, 75 dispatcher jobs, 250 order clerk jobs, and 200 telephone solicitor jobs. This is sufficient to constitute a significant number of jobs under the Act and the case law. *See, Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir.1987); *Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir.1988); *Hall v. Bowen*, 837 F.2d 272 (6th Cir.1988).

Taken in balance, this court is of the view that substantial evidence supports the Secretary's conclusions. Accordingly, the Secretary's decision denying benefits will be affirmed.

### Conclusion

On the basis of the foregoing, plaintiff's motion for summary judgment is hereby

DENIED and defendant's motion for summary judgment is hereby GRANTED.